**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cromer v. Children's Hosp. Med. Ctr. of Akron,* **Slip Opinion No. 2015-Ohio-229.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-229

CROMER ET AL., APPELLEES, *v*. CHILDREN'S HOSPITAL MEDICAL CENTER OF AKRON, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cromer v. Children's Hosp. Med. Ctr. of Akron, Slip Opinion No. 2015-Ohio-229.]***

*Medical malpractice—Standard of care—Foreseeability of harm is generally relevant to determining whether physician exercised reasonable care—In context of established physician-patient relationship, foreseeability of harm is not necessary consideration in determining whether physician owes patient duty of care—Jury instruction on foreseeability of harm unnecessary when parties do not dispute that physician understood risk of harm.*

(No. 2012-2134—Submitted November 20, 2013—Decided January 27, 2015.)

APPEAL from the Court of Appeals for Summit County,

No. 25632, 2012-Ohio-5154.

_____

**SYLLABUS OF THE COURT**

1. Foreseeability of harm is relevant to a physician's standard of care, and a correct, general statement of the law regarding the standard of care or the breach of that standard includes the element of foreseeability.

2. In the context of an established physician-patient relationship, consideration of foreseeability is unnecessary to the determination whether the patient is someone to whom the physician owes a duty of care.

3. A jury instruction on a general rule of law, even if correct, should not be given if the instruction is not applicable to the evidence presented.

_____

**O'CONNOR, C.J.**

**{¶ 1}** In this appeal, we are asked to consider the role of foreseeability as an element of medical negligence. Specifically, we are asked to determine whether foreseeability of the risk of harm is a factor that must always be considered when determining a medical professional's duties or if it is an irrelevant factor that may never be considered when determining a medical professional's duties. We hold that it is neither.

**{¶ 2}** Foreseeability is generally relevant to a determination of whether a physician has exercised reasonable care in understanding or determining the existence of a risk of harm associated with a particular course of treatment. But when the parties do not dispute that a physician conducted a risk-benefit analysis prior to treating a patient and do not dispute that the physician understood that the chosen course of treatment carried some risk of harm, a jury instruction regarding the foreseeability of harm need not be given. However, the instruction would not be patently prejudicial, and the judgment is not subject to reversal absent a showing of material prejudice.

{¶ 3} Under the facts of this case, the trial court's decision to provide a superfluous instruction to the jury on foreseeability was not prejudicial error. We therefore reverse the judgment of the court of appeals.

## RELEVANT BACKGROUND

{¶ 4} This medical-negligence action arose from the death of Seth Niles Cromer at the pediatric intensive-care unit ("PICU") of Children's Hospital Medical Center of Akron. Melinda Cromer, Seth's mother, and Roderick Cromer Jr., Seth's father, individually and as administrator, brought an action against the hospital, alleging that Seth's death was caused by the combined and individual negligence of multiple hospital employees.

### *The Treatment Provided*

{¶ 5} Much of the evidence was disputed at trial. But it was shown that Seth's parents took him to the hospital's emergency room at approximately 10:44 p.m. on Saturday, January 13, 2007, after Seth, who had been treated earlier in the week for an ear infection, became very ill. At triage, Seth's symptoms and vital signs included an elevated pulse and rate of respiration, a tender abdomen with pressure, pale skin, normal temperature, and normal blood pressure. Seth's condition was assessed as urgent, and upon further examination by emergency-room doctors, Seth was diagnosed as suffering from shock. At approximately 11:30 p.m., the attending emergency-room physician, Brett Luxmore, D.O., ordered the administration of oxygen therapy, intravenous fluids, and intravenous antibiotics. Because Seth's blood pressure had lowered and was unstable by the time Dr. Luxmore assessed him, Dr. Luxmore also ordered the administration of epinephrine in an attempt to raise the blood pressure.

{¶ 6} Initial blood tests, taken at midnight, indicated that Seth was suffering from metabolic acidosis, which means that his blood was not delivering adequate oxygen to his tissues. But he was not suffering from respiratory acidosis, which would have meant that his blood was accumulating carbon

dioxide. Around 12:30 a.m. on January 14, 2007, the amount of oxygen in Seth's blood rose to a normal level. His blood pressure improved as well, albeit due to the continuous administration of a high dose of epinephrine.

{¶ 7} While Seth was being transferred from the emergency room to PICU around 1:10 a.m., his condition worsened. It was later discovered that the carbon-dioxide levels in Seth's blood had begun to rise. The attending PICU physician, Richard Wendorf, M.D., (1) inserted a central-venous-access catheter in Seth's femoral vein for the instant administration of medication and fluids as well as for rapid assessment of blood-gas levels and fluid balance, (2) inserted an arterial catheter in Seth's femoral artery for continuous real-time monitoring of blood pressure, and then (3) inserted a tube into Seth's trachea to decrease the heart's burden and facilitate ventilation. Dr. Wendorf completed these procedures by 1:46 a.m., 2:00 a.m., and 2:15 a.m., respectively. Seth's condition improved until approximately 3:35 a.m., at which point his blood pressure dropped precipitously and he went into cardiac arrest. Seth died soon after.

### *The Cromers' Expert Testimony*

{¶ 8} The Cromers' expert, Margaret Parker, M.D., agreed that the interventions and treatment that the emergency-room and PICU physicians had ordered were appropriate. However, she did not agree that the timing of the interventions and treatment, particularly intubation, was appropriate.

{¶ 9} Dr. Parker testified that the longer shock is allowed to progress, the harder the strain on the heart, and the harder it is to reverse the problem. Dr. Parker explained that intubation helps to increase blood oxygenation, decrease carbon dioxide levels, and decrease the energy spent on breathing. Dr. Parker testified that the standard of care for medical professionals would mandate immediate intubation upon discovering evidence of severe metabolic and respiratory acidosis. Dr. Parker opined that Seth's respiratory rate of 31 breaths per minute and the blood-test results delivered at 12:19 a.m. were clear evidence

of severe metabolic and respiratory acidosis. Dr. Parker concluded that the hospital employees deviated from the standard of care by not intubating Seth until two hours later.

{¶ 10} Specifically, Dr. Parker testified that Dr. Luxmore breached the standard of care by not intubating Seth in the emergency room by 12:30 a.m. and that Dr. Wendorf breached the standard of care by not intubating Seth immediately upon his arrival at the PICU. However, Dr. Parker later testified that Dr. Wendorf's decision to place a central venous line prior to intubation was within the standard of care. Dr. Parker also agreed that both doctors considered the risks of both immediate and delayed intubation prior to deciding to implement their particular courses of action. But she disagreed that the doctors appropriately weighed the risks and benefits and disagreed that their clinical judgments regarding the timing of intubation were reasonable.

### The Hospital's Expert Testimony

{¶ 11} Dr. Luxmore acknowledged that shock is a life-threatening condition that can lead to death if not properly treated. Dr. Luxmore testified that although intubation could decrease the levels of carbon dioxide in the blood and decrease the strain on a patient's heart, that benefit must be weighed against the risk of causing a sudden drop in blood pressure and cardiac arrest. Because Seth's blood pressure was tenuous but he otherwise had a stable airway and his circulatory system was not building up carbon dioxide while he was in the emergency room, Dr. Luxmore decided that the benefit of intubation at that time was outweighed by the risk that Seth would not survive the process of intubation.

{¶ 12} One of the hospital's experts, Robert Kennedy, M.D., explained that the sedation required to intubate a patient could cause blood pressure to bottom out completely. Dr. Kennedy testified that although intubation would be important in the long run to decrease the strain on the patient, other measures to stabilize the patient take priority in the emergency department if the patient is able

to breathe. Dr. Kennedy opined that Dr. Luxmore complied with the standard of care when he decided not to intubate Seth in the emergency department given that Seth's blood circulation required intervention and his carbon-dioxide levels were normal.

{¶ 13} Dr. Wendorf testified that he knew right away that he was going to intubate Seth due to the risk that Seth's condition would worsen, but that immediate intubation without taking certain precautions would have been unnecessarily risky in light of Seth's precarious condition. Another expert, Douglas Wilson, M.D., testified that the importance of relieving the strain on a patient's cardiovascular system must be weighed against the risk of inducing cardiac arrest. Dr. Wilson opined that Dr. Wendorf understood the risks and benefits involved and weighed them appropriately in reaching his decision on the sequence of placing catheters and intubating Seth.

### *The Jury Instructions*

{¶ 14} After the close of evidence, the parties discussed their proposed jury instructions with the court. Many of the parties' proposed instructions incorporated standard language from the Ohio Jury Instructions outlining the elements of medical negligence and applicable standard of care. However, the hospital also requested an instruction on the foreseeability of harm using language from the general negligence provisions of the Ohio Jury Instructions.

{¶ 15} The Cromers objected to the instruction, arguing that an instruction to the jury on foreseeability is required only in a regular negligence claim and is not part of the Ohio Jury Instructions for medical negligence. The Cromers further argued that the instruction was not supported by the evidence, because there was no testimony that the doctors did not know that the failure to appropriately treat a patient in shock could lead to death. The trial court ultimately instructed the jury on the elements of negligence as they applied to the hospital and its employees and gave an instruction on foreseeability that asked the

jury to determine whether the hospital employees should have foreseen that Seth's death was a likely result of their actions or failure to act.

### The Verdict

{¶ 16} At the end of its charge, the trial court provided general verdict forms and multiple interrogatories to the jury. The first interrogatory asked whether the hospital had been negligent. Another interrogatory asked whether the hospital's negligence was a direct and proximate cause of Seth Cromer's death. The trial court explained that if the jury's answer to the first interrogatory was "no," then its deliberations were complete.

{¶ 17} After the jury completed its deliberations, the trial court reviewed the forms and noted that the jury had answered "no" on both the negligence and causation interrogatories. The trial court stated that although it would not have been necessary to complete the interrogatory on proximate causation, the jury's answer was consistent with the interrogatory on negligence. The trial court polled the jury, provided the interrogatories to counsel, and upon receiving no objection, excused the jury. The trial court accordingly entered judgment in favor of Children's Hospital.

### The Posttrial Proceedings

{¶ 18} The Cromers moved for a new trial, arguing that the verdict was against the manifest weight of the evidence and that the interrogatories finding both no negligence and no causation were in conflict. They also claimed that there were multiple errors in the jury instructions, and that the jury's completion of the causation interrogatory constituted a clear sign that the erroneous instructions led the jury to an improper application of the law. The trial court denied the motion, stating that although the jury did not follow the court's instruction that deliberations would be complete upon a finding that negligence was not shown, the interrogatories were consistent with one another and with the general verdict.

**{¶ 19}** The Cromers appealed, arguing that the trial court committed reversible error by including an instruction on foreseeability when it instructed the jury on the hospital's standard of care. The Cromers additionally argued that the verdict was against the manifest weight of the evidence and that the trial court had erroneously denied their motion for a new trial. And as primary support for their arguments, the Cromers pointed to the jury's unnecessary completion of the causation interrogatory as confirmation that the jury had misunderstood the law and applied the instructions in a way that led to an erroneous result. The Cromers further contended that the fact that the jury found no causation did not render harmless any error in its finding regarding negligence, because once the jury had determined that there was no negligence, a finding of no causation was a logical impossibility. The appellate court found merit in the Cromers' jury-instruction argument and reversed.

**{¶ 20}** Central to the appellate court's holding was its determination that the question of foreseeability of harm was irrelevant to a determination of a medical professional's standard of care. 2012-Ohio-5154, 985 N.E.2d 548, ¶ 27. Specifically, the court held that a physician's duty is established by the physician-patient relationship alone with no consideration of foreseeability. *Id.* at ¶ 24. The court concluded that the trial court's instruction on the foreseeability of the risk of harm during medical treatment constituted an incorrect statement of law that required reversal. *Id.* Finally, the appellate court stated that it could not conclude that the error was rendered harmless by the jury's decision to answer the interrogatory on causation. *Id.* at ¶ 25. Accordingly, the court held that reversal and a remand for a new trial were required. Because the appellate court's holding disposed of the appeal, the Cromers' remaining arguments were rendered moot and were not addressed.

**{¶ 21}** The cause is now before this court upon our acceptance of a discretionary appeal to determine the propriety of including a foreseeability

8

instruction when instructing a jury on the standard of care for medical professionals.  134 Ohio St.3d 1484, 2013-Ohio-902, 984 N.E.2d 28.

### ANALYSIS

### *Standard of Review*

**{¶ 22}** A trial court is obligated to provide jury instructions that correctly and completely state the law.  *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312, 649 N.E.2d 1219 (1995).  The jury instructions must also be warranted by the evidence presented in a case.  *Estate of Hall v. Akron Gen. Med. Ctr.*, 125 Ohio St.3d 300, 2010-Ohio-1041, 927 N.E.2d 1112, ¶ 26.  The question of whether a jury instruction is legally correct and factually warranted is subject to de novo review.  *Id.*  We begin our de novo review by examining whether a correct statement of the law regarding medical negligence includes consideration of the foreseeability of a risk of harm.

### *Relevance of Foreseeability in a Medical-Negligence Claim*

**{¶ 23}** In general, a cause of action for negligence requires proof of (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages.  *See Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).  The elements are the same for medical negligence.  *Loudin v. Radiology & Imaging Servs., Inc.*, 128 Ohio St.3d 555, 2011-Ohio-1817, 948 N.E.2d 944, ¶ 13.  Only the elements relating to duty are at issue in this case.

**{¶ 24}** The concept of foreseeability is an important part of all negligence claims, because "[t]he existence of a duty depends on the foreseeability of the injury."  *Menifee* at 77.  As a society, we expect people to exercise reasonable precautions against the risks that a reasonably prudent person would anticipate.  *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989).  Conversely, we do not expect people to guard against risks that the reasonable person would not foresee.  *Menifee* at 77; Keeton, Dobbs, Keeton &

Owen, *Prosser and Keeton on the Law of Torts*, Section 43, 280 (5th Ed.1984). The foreseeability of the risk of harm is not affected by the magnitude, severity, or exact probability of a particular harm, but instead by the question of whether *some* risk of harm would be foreseeable to the reasonably prudent person. *See Gedeon v. E. Ohio Gas Co.*, 128 Ohio St. 335, 339, 190 N.E. 924 (1934). Accordingly, the existence and scope of a person's legal duty is determined by the reasonably foreseeable, general risk of harm that is involved.

{¶ 25} The existence of an actor's duty to another person usually arises from the foreseeability of injury to someone in that other person's "general situation." *Gedeon* at 339. But there are also certain legally recognized relationships between parties that can establish the existence of an actor's duty to another person. *Estates of Morgan v. Fairfield Family Counseling Ctr.*, 77 Ohio St.3d 284, 293, 673 N.E.2d 1311 (1997). The relationship between medical professionals and their patients is one of those legally recognized relationships. *Lownsbury v. VanBuren*, 94 Ohio St.3d 231, 235, 762 N.E.2d 354 (2002). The physician-patient relationship arises from an express or implied contract between the physician and patient and imposes on the physician a fiduciary duty to exercise good faith. *Id.*, quoting *Tracy v. Merrell Dow Pharmaceuticals, Inc.*, 58 Ohio St.3d 147, 150, 569 N.E.2d 875 (1991).

{¶ 26} In the context of an established physician-patient relationship, there is no need to independently determine whether the patient falls within the class of people who could foreseeably be injured, because the existence of the physician's duty to that patient is already clear. To this extent, the appellate court accurately held that foreseeability is irrelevant to a determination of a physician's duty. 2012-Ohio-5154, 985 N.E.2d 548, at ¶ 22. But the foreseeability of one's duty to a particular person does not necessarily determine the foreseeability of a risk of harm, and it therefore does not end the inquiry into the scope of an actor's duty to another person.

10

**{¶ 27}** The scope of any duty owed is the standard of care that an actor must exercise. *Commerce & Industry Ins. Co.* at 98; *Berdyck v. Shinde*, 66 Ohio St.3d 573, 578, 613 N.E.2d 1014 (1993). The minimum standard of care expected under any circumstances is to exercise that degree of care and caution that an ordinarily careful and prudent person would exercise under similar circumstances. *Gedeon* at 338. In the physician-patient relationship, however, the scope of the duty owed includes an augmented expectation that physicians will exercise the degree of care that is reasonable in light of the physician's superior training and knowledge. *Berdyck* at 579. Thus, the standard of care applicable to medical professionals is to exercise the degree of care that a medical professional of ordinary skill, care, and diligence would exercise under similar circumstances. *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976), at paragraph one of the syllabus.

**{¶ 28}** Although the standard of care for a medical professional is heightened, it does not necessarily supplant all consideration of foreseeability. As part of their standard of care, medical professionals are expected to be able to recognize certain symptoms of illness and injury, and they are expected to be aware of the associated risk of harm. *See Berdyck* at 581 (obstetrical staff nurses are expected to recognize symptoms of major obstetrical complications and take appropriate action to prevent harm). In other words, they are expected to foresee a risk of harm that a medical professional of ordinary skill, care, and diligence would foresee under similar circumstances. And just as with the general negligence standard, it necessarily follows that we would not expect medical professionals to guard against a risk of harm that a medical professional of ordinary skill, care, and diligence would not foresee. *See, e.g.*, *Keebler v. Winfield Carraway Hosp.*, 531 So.2d 841, 844-845 (Ala.1988), citing *Fernandez v. Baruch*, 52 N.J. 127, 244 A.2d 109 (1968) (explaining that a physician does not have a duty to take measures to prevent a patient from committing suicide if the

patient's suicide was not reasonably foreseeable under generally accepted medical standards). Accordingly, foreseeability of harm is relevant to a physician's standard of care, and a correct, general statement of the law regarding the standard of care or the breach of that standard includes the element of foreseeability.

{¶ 29} Because foreseeability of harm is relevant to the determination of the scope of a physician's duty in a medical-malpractice action, giving a foreseeability instruction in such an action is not manifestly incorrect, and the appellate court's conclusion to the contrary was erroneous.

{¶ 30} Having clarified the general question of law, we next consider the instruction in light of the facts of the case.

### *Factual Propriety of Including a Foreseeability Instruction*

{¶ 31} Foreseeability of harm usually does not enter into the analysis of medical negligence, not because it is legally irrelevant, but because it is almost always factually undisputed that a risk of harm was foreseeable and that the medical professional was aware that the chosen course of treatment involved a risk of harm. *See, e.g.*, *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 30-31 (whether postsurgical infection was a foreseeable risk of performing an invasive surgery was not disputed); *Hubach v. Cole*, 133 Ohio St. 137, 139, 12 N.E.2d 283 (1938) (risk of burns from radium treatment was foreseen). Instead, in the more common line of cases, the pertinent question is whether the medical professional acted unreasonably in the face of those risks. *See, e.g.*, *Branch v. Cleveland Clinic Found.*, 134 Ohio St.3d 114, 2012-Ohio-5345, 980 N.E.2d 970, ¶ 27 (relevant inquiry was whether "different planning and procedures could have prevented the stroke," not whether brain injury was foreseeable); *Beard* (relevant dispute was whether the physician reasonably assessed the likelihood and magnitude of a patient's risk of infection, not whether infection was foreseeable); *Hier v. Stites*, 91 Ohio St. 127, 128, 110

12

N.E. 252 (1914) (relevant inquiry was only whether failure to sterilize equipment and cleanse wound breached the physician's standard of care, not whether infection was foreseeable). Such is the case here.

{¶ 32} In this case, the treating physicians were not accused of failing to foresee that the negative effects of the progression of shock and the strain on a patient's cardiovascular system were risks of delaying the intubation of a patient in shock. They admitted to having knowledge of these risks and weighing them against the risks and benefits of performing other precautionary measures prior to intubation. Thus, the parties did not dispute that the treating physicians foresaw that there was a risk of harm associated with their choice of emergency treatment. Instead, they debated whether the physicians reasonably appreciated the magnitude of the risk and properly weighed it in their risk-benefit analyses. Accordingly, the question remaining was whether the physicians' chosen course of treatment was reasonable in light of the risks.

{¶ 33} We have long held that a trial court should limit its instructions to the jury to matters actually raised in the pleadings and in the evidence at trial. *Becker v. Lake Cty. Mem. Hosp. W.,* 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990), citing *Hood v. New York, Chicago & St. Louis Ry. Co.*, 166 Ohio St. 529, 144 N.E.2d 104 (1957), paragraph four of the syllabus. "Abstract rules of law or general propositions, even though correct, ought not to be given unless specifically applicable to facts in issue." *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981). Even if an instruction is related to facts in the evidence, an instruction that draws attention to irrelevant issues may be objectionable. *Masci v. Keller*, 18 Ohio St.2d 67, 247 N.E.2d 457 (1969) (instructing a jury that it may find in favor of the "defendants," including the claimant's employer, was incorrect because it was irrelevant to the only question in the case, which was whether the claimant was entitled to participate in the State Insurance Fund).

**{¶ 34}** There was no question for the jury in this case regarding the foreseeability of the risk of harm because the medical professionals were aware that their chosen chronology of treatment of Seth's shock carried with it some risk of harm. Thus, the instruction regarding the foreseeability of harm was not necessary in light of the facts and arguments presented in this case. We next consider the potential effect of the unnecessary instruction on the Cromers' case.

### Propriety of Jury Instructions as a Whole

**{¶ 35}** An unnecessary, ambiguous, or even affirmatively erroneous portion of a jury charge does not inevitably constitute reversible error. *See Becker*, 53 Ohio St.3d at 208, 560 N.E.2d 165. If there is no inherent prejudice in the inclusion of a particular jury instruction, prejudice must be affirmatively shown on the face of the record, and it cannot be presumed. *Wagner v. Roche Laboratories*, 85 Ohio St.3d 457, 461-462, 709 N.E.2d 162 (1999). "In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and 'must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights.' " *Kokitka v. Ford Motor Co.*, 73 Ohio St.3d 89, 93, 652 N.E.2d 671 (1995), quoting *Becker* at 208. If the complete set of instructions by the trial court otherwise fairly and correctly lays out the relevant law, and if it is apparent in the context of the complete instructions that an isolated error did not prejudice a party's substantial rights, reversal on such error is not warranted. *Centrello v. Basky*, 164 Ohio St. 41, 128 N.E.2d 80 (1955), paragraph eight of the syllabus.

**{¶ 36}** The general rule is that an erroneous instruction does not necessarily mislead a jury. *See Cleveland Elec. Illum. Co. v. Astorhurst Land Co.*, 18 Ohio St.3d 268, 274-275, 480 N.E.2d 794 (1985). The same rule applies in a

14

medical-malpractice case.  *See Hayward v. Summa Health Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.2d 243, ¶ 33.[1]

{¶ 37} In *Cleveland Elec. Illum. Co.*, the trial court erroneously instructed the jury that eight rather than nine members of a 12-member jury needed to agree upon the verdict.  Although nine jurors signed the verdict form, one of those nine later averred that he had not agreed with the verdict but had signed the form because he believed that his vote was purely academic.  *Id.* at 273-274.  We rejected the argument that the trial court's erroneous instruction necessarily rendered the verdict invalid.  Instead, we held that the question was whether the instruction itself was so misleading that it could have directly induced an erroneous verdict.  *Id.* at 274, quoting *Long v. Cassiero*, 105 Ohio St. 123, 136 N.E. 888 (1922).  We noted that the trial court had instructed the jurors to sign the form only if they concurred in the verdict and had not indicated that any juror should sign the form "(a) after eight other jurors had signed it, or (b) when it became 'academic' for him to refuse to do so."  *Id.* at 275.  Because the inaccurate instruction could not have induced the ninth juror to vote against his true intent, there was no showing of prejudicial error.  *Id.* at 275.

{¶ 38} In *Hayward*, the trial court provided an erroneous instruction regarding remote causation in a medical-negligence action, but the only alleged evidence of juror confusion was the fact that the jury had completed separate

---

[1] The above-described standards for finding prejudice in an erroneous jury instruction are well settled, and we declined jurisdiction over the hospital's assertion that the appellate court failed to apply these standards correctly.  This court generally declines to entertain issues that do not involve a question of great general or public interest, such as ones that request resolution of an individual case rather than resolution of the law.  Ohio Constitution, Article IV, Section 2(e); S.Ct.Prac.R. 7.08(B)(4)(b).  But in order to fully determine whether the appellate court's dispositional order for a new trial should be affirmed or reversed based on the issue currently under our review, we must answer the secondary, implicit issue of prejudice.  *See Belvedere Condominium Unit Owners' Assn. v. R .E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 279, 617 N.E.2d 1075 (1993).  And because correction of the alleged error readily comes from our review of the entire record, we are able to resolve this issue without receiving additional briefing on the already settled law.

interrogatories finding no causation despite having already found that the defendant was not negligent *Id.* at ¶ 22. Because the interrogatories were consistent with the general verdict, and because the erroneous instruction did not induce the jurors to complete the mooted interrogatories, we held that no prejudice was shown from the instruction itself. *Id*. at ¶ 32. Accordingly, in order to demonstrate reversible error, there must be a connection between the allegedly erroneous jury instruction and the alleged evidence of juror confusion.

{¶ 39} In the present case, the jury instruction found to constitute reversible error by the court of appeals stated as follows:

> In deciding whether ordinary care was used, you will consider whether the defendant should have foreseen under the attending circumstances that the natural and probable result of an act or failure to act would cause Seth Cromer's death.
>
> The test for foreseeability is not whether the defendant should have foreseen the death of Seth Cromer precisely as it happened. The test is whether under all the circumstances a reasonably cautious, careful, prudent person would have anticipated that death was likely to result to someone from the act or failure to act.
>
> If the defendant by the use of ordinary care should have foreseen the death and should not have acted, or if they did act, should have taken precautions to avoid the result, the performance of the act or the failure to act to take such precautions is negligence.

This foreseeability instruction was drawn from *Ohio Jury Instructions*, CV Section 401.07(1) (Rev. May 12, 2012), which states:

1. General. In deciding whether (reasonable) (ordinary) care was used, you will consider whether the defendant(s) should have foreseen under the circumstances that the likely result of an act or failure to act would cause (injuries) (damages).

2. Test. The test for foreseeability is not whether a person should have foreseen the (injuries) (damages) exactly as it happened to the specific (person) (property). The test is whether under the circumstances a reasonably careful person would have anticipated that an act or failure to act would likely (result in) (cause) (injuries) (damages).

{¶ 40} We note that the issue of foreseeability of harm, if factually relevant in a medical-negligence case, would have to be considered in the context of "recognized standards * * * provided through expert testimony," just like any other element of a medical-negligence claim. *Bruni v. Tatsumi,* 46 Ohio St.2d 127, at 131-132, 346 N.E.2d 673 (1976). When assessing the actions of a medical professional, it would be inappropriate to view foreseeability in terms of a layperson's "ordinary" standard of care. For that reason, it would be preferable for OJI to include in its medical-specific jury instructions a foreseeability instruction that incorporates the specific standard of the reasonable medical professional rather than the reasonable person. However, because the instructions in the present case repeatedly defined "reasonable" and "ordinary care" solely in the context of a "reasonable hospital," a "reasonably careful physician," and "hospitals, physicians and/or nurses of ordinary skill, care and diligence," the jury instructions regarding the applicable standard of care, as a whole, were not misleading. *See Youngstown Mun. Ry. Co. v. Mikula*, 131 Ohio St. 17, 20, 1 N.E.2d 135 (1936).

{¶ 41} Regardless, the appellate court's determination of error in this case was based not on particular word choices in the trial court's foreseeability instruction, but on the inclusion of the concept of foreseeability, as a whole, in jury instructions on medical negligence. And by requiring reversal based on the trial court's mere inclusion of a foreseeability instruction, the appellate court erroneously presumed that the error was prejudicial[2] instead of determining whether there was a clear indication on the face of the record that the instruction prejudiced the Cromers' substantial rights. *Wagner* at 461-462.

{¶ 42} The only manifestation of the jury being misled by the foreseeability instruction that was identified to the appellate court was that the jurors completed the interrogatory regarding proximate cause instead of stopping after finding that negligence had not occurred. But similarly to *Cleveland Elec. Illum. Co.* and *Hayward*, we see no connection between an unnecessary foreseeability instruction and the jurors' decision to complete the interrogatory for the mooted issue of causation after completing the interrogatory for the primary issue of negligence. Thus, some other showing from the record would be necessary to establish that the instruction led the jury to an erroneous result in this case. However, none was made.

{¶ 43} The jury's answers to the negligence and the causation interrogatories, both in favor of the defense, were not inconsistent with one another, nor were they inconsistent with the general verdict. Further, in contrast to the manifestly erroneous instruction in *Cleveland Elec. Illum. Co.* and the factually unsupported instruction in *Hayward*, the foreseeability instruction in this case was drawn from the actual facts presented, but was mere surplusage. Accordingly, the record in this case does not establish that the unneeded jury

---

[2] Contrary to the position taken in the dissenting opinion, the appellate court's discussion of whether the proximate-cause interrogatory rendered the error harmless did not somehow cure the appellate court's failure to find prejudice on the face of the record in the first place.

instruction on foreseeability prejudiced the Cromers' substantial rights, and the appellate court's reversal was not justified.

### CONCLUSION

{¶ 44} In the context of an established physician-patient relationship, consideration of foreseeability is unnecessary to the determination whether the patient is someone to whom the physician owes a duty of care. But the issue of foreseeability is relevant to a physician's standard of care in treating a particular patient, and separate consideration of the foreseeability of harm is appropriate if there is a question for the jury regarding whether the physician knew or should have known that a chosen course of treatment involved a risk of harm. However, in most medical-negligence cases, including this one, the foreseeability of a risk of harm related to the medical treatment is conceded, leaving no need for a jury instruction on foreseeability.

{¶ 45} Further, a jury instruction on a general rule of law, even if correct, should not be given if the instruction is not applicable to the evidence presented. But the inclusion of an unnecessary instruction does not constitute reversible error absent a showing of material prejudice. Because such a showing was not provided in this case, the appellate court should not have disturbed the jury's verdict.

{¶ 46} We therefore reverse the judgment of the court of appeals. We remand the cause to the appellate court to consider the Cromers' assignments of error regarding the manifest weight of the evidence and the failure to grant the motion for a new trial, which the appellate court previously held were mooted by its disposition.

Judgment reversed
and cause remanded.

LANZINGER, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL and KENNEDY, JJ., concur in judgment only.

PFEIFER, J., dissents.

_____

**O'DONNELL, J., concurring in judgment only.**

{¶ 47} This appeal raises two issues: first, whether the trial court in this medical malpractice action erred in instructing the jury on the concept of foreseeability applicable to an ordinary negligence claim, and second, whether that instruction probably misled the jury and resulted in an erroneous verdict. Because the court's instructions did not accurately charge the jury on the applicable law, and because the court of appeals failed in the first instance to determine whether the erroneous instructions probably misled the jury and resulted in an erroneous verdict, I concur in the court's judgment to reverse and remand the matter for further proceedings.

{¶ 48} A cause of action for negligence requires the claimant to prove "the existence of a duty, a breach of that duty, and an injury resulting proximately therefrom." *Menifee v. Ohio Welding Prods., Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). In ordinary negligence cases, we have stated that "[t]he existence of a duty depends on the foreseeability of the injury." *Id.* And as we explained in *Menifee,* "[t]he test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Id. See also Gedeon v. E. Ohio Gas Co.,* 128 Ohio St. 335, 338, 190 N.E. 924 (1934) ("No one is bound to take care to prevent consequences which, in the light of human experience, are beyond the range of probability").

{¶ 49} But in medical malpractice cases, we have not generally used the concept of foreseeability to define the duty that a medical provider owes to a patient. Rather, in *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 129, 346 N.E.2d 673 (1976), we set forth the test for evaluating the conduct of a physician or surgeon charged with malpractice as

whether the physician, in the performance of his service, either did some particular thing or things that physicians and surgeons, in that medical community, of ordinary skill, care and diligence would not have done under the same or similar circumstances, or failed or omitted to do some particular thing or things which physicians and surgeons of ordinary skill, care and diligence would have done under the same or similar circumstances.

{¶ 50} We also have relied on the concept of foreseeability in determining whether the negligent act proximately caused the injury. *See, e.g., Mussivand v. David*, 45 Ohio St.3d 314, 321, 544 N.E.2d 265 (1989) ("in order to establish proximate cause, foreseeability must be found"); *Strother v. Hutchinson*, 67 Ohio St.2d 282, 287, 423 N.E.2d 467 (1981) ("a reasonable foreseeability of injury is considered an element of proximate cause"). As we explained in *Gedeon*, "The law, in determining liability for harm done, refuses to follow the logical chain of causation beyond what it regards as the direct or proximate cause." 128 Ohio St. at 339, 190 N.E. 924. Thus, it is not enough that the negligent act is a cause-in-fact of the injury, but the injury must also be " 'the natural and probable consequence' " of the negligent act, that is, " 'it must appear that the injury complained of could have been foreseen or reasonably anticipated from the alleged negligent act.' " *Strother* at 287, quoting *Ross v. Nutt*, 177 Ohio St. 113, 114, 203 N.E.2d 118 (1964).

{¶ 51} Here, the trial court erred in giving the jury instruction on foreseeability. First, there is no question that the medical professionals treating Seth owed him a duty of reasonable care arising from the doctor-patient relationship, nor is it disputed that the injury complained of could have been

reasonably anticipated from the allegedly negligent acts. Any foreseeability of harm to Seth was therefore not at issue in this case.

**{¶ 52}** Second, and more importantly, the trial court's instruction on foreseeability fundamentally misstated the standard of care applicable in medical malpractice cases. The court framed its foreseeability instructions in terms of a layperson's ability to anticipate that death would likely result from an act or a failure to act by the hospital's medical professionals. But a reasonable layperson considering the circumstances in this case—in which a child presents to an emergency department suffering from an ear infection and dehydration—lacks the necessary knowledge, training, and experience to appreciate whether or not the child's death was likely to result. Rather, the question is whether the hospital's medical professionals "employ[ed] that degree of skill, care and diligence that a physician or surgeon of the same medical specialty would employ in like circumstances." *Berdyck v. Shinde*, 66 Ohio St.3d 573, 579, 613 N.E.2d 1014 (1993).

**{¶ 53}** The trial court compounded this error by stating the foreseeability instruction in terms of probability. Although the reasonable person in an ordinary negligence case may be required to anticipate only those injuries that are *likely to result* from a course of conduct, a doctor is charged with possessing the specialized knowledge and experience of the medical profession and therefore is required to anticipate diagnoses that may be unlikely or rare. As one treatise explains, "It is the object of diagnostic effort to identify the disease responsible for the patient's present syndrome. Thus, the ultimate step in differential diagnosis consists of selecting from *a number of possibilities* the disease or diseases that come nearest to explaining the clinical and laboratory finding in the case in question." (Emphasis added.) 1 Pegalis, *American Law of Medical Malpractice 3d*, Section 3:12, at 231 (2005).

**{¶ 54}** In effect, the trial court informed the jury that the hospital's doctors had a duty to foresee and treat only those diseases that appeared more likely than not to cause Seth's illness, regardless of whether a reasonable medical professional in the same specialty under like circumstances would have correctly diagnosed and treated the condition from which he suffered. The Supreme Court of Georgia in *Smith v. Finch*, 285 Ga. 709, 681 S.E.2d 147 (2009), recently concluded that a similar instruction charging the jury in a medical malpractice action that " '[n]egligence consists of not foreseeing and guarding against that which is probable and likely to happen, not against that which is only remotely and slightly possible' " was inaccurate and misleading, because it directed the jury that it could not find negligence in the failure to diagnose a relatively rare but severe disease. *Id.* at 710-711, quoting 1 *Suggested Pattern Jury Instructions: Civil Cases*, Section 62.311 (4th Ed.2004).

**{¶ 55}** For these reasons, the instruction the trial court gave on foreseeability is erroneous, and I see no need to provide an advisory opinion speculating on when an instruction on foreseeability might be appropriate in charging the jury on the standard of care for medical professionals.

**{¶ 56}** Erroneous jury instructions rise to reversible error only if "the jury charge was so misleading and prejudicial as to result in an erroneous verdict." *Hayward v. Summa Health Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, ¶ 25.

**{¶ 57}** Here, the majority's analysis is based on a mistaken reading of the Ninth District's decision; the majority asserts that "the appellate court erroneously presumed that the error was prejudicial," majority opinion at ¶ 41, and that "[t]he only manifestation of the jury being misled by the foreseeability instruction that was identified to the appellate court was that the jurors completed the interrogatory regarding proximate cause instead of stopping after finding that negligence had not occurred," *id.* at ¶ 42. It is true that there is "no connection

between an unnecessary foreseeability instruction and the jurors' decision to complete the interrogatory for the mooted issue of causation," majority opinion at ¶ 42, but the court of appeals drew no such connection and did not find prejudice simply because the jury failed to comply with the trial court's instruction not to answer the interrogatory on proximate cause if it found that the hospital had not been negligent.   The appellate court addressed only whether the erroneous instruction could be deemed harmless based on the jury's additional finding that the hospital's negligence had not proximately caused Seth's death, such that the Cromers would have failed to prove their cause of action notwithstanding the erroneous instruction.

{¶ 58} In fact, the court of appeals did not consider whether the jury instructions, taken as a whole, probably misled the jury, and it provided little analysis in support of its conclusion that the trial court committed reversible error. But as we recently explained in *Hayward*, an appellate court " 'will not assume the presence of prejudice * * * but must find prejudice on the face of the record.' " *Hayward* at ¶ 26, quoting *Wagner v. Roche Laboratories,* 85 Ohio St.3d 457, 462, 709 N.E.2d 162 (1999).

{¶ 59} Accordingly, I would reverse the judgment of the court of appeals and remand the matter for a determination whether the jury instructions, taken as a whole, probably misled the jury and resulted in an erroneous verdict in this case. I therefore concur in the majority's judgment, but not its reasoning.

KENNEDY, J., concurs in the foregoing opinion.

_____

**PFEIFER, J., dissenting.**

I

{¶ 60} The majority holds that the appellate court correctly held that the trial court erred in including a jury instruction on foreseeability, but concludes that the appellate court failed to show that the jury instructions materially

prejudiced the Cromers. The majority opinion is weighted with syllabus paragraphs, but all the syllabus paragraphs in the world cannot change the fact that the sole, unremarkable holding of this case is that the appellate court did not do enough to show that the jury instructions it correctly held were erroneous were prejudicial. But here is the rub: that issue is not before this court. This court specifically refused jurisdiction on the following proposition of law offered by the appellant:

> A verdict may not be reversed for a claimed error in the jury instructions where the jury instruction, as a whole, properly explained the applicable law, and where there has been no demonstration that the jury was *probably* misled by the allegedly erroneous instruction.

(Emphasis sic.) *See* 134 Ohio St.3d 1484, 2013-Ohio-902, 984 N.E.2d 28.

{¶ 61} The appellant had argued in that proposition of law that even if the foreseeability instruction was wrong, the trial court's instructions as a whole did not mislead the jury. By refusing to accept that proposition of law, this court let stand the court of appeals' determination of prejudice. This court accepted jurisdiction on only the following proposition of law:

> Foreseeability is a vital and important factor for a jury to consider in determining whether a medical defendant has acted as a reasonably prudent medical provider under the same or similar circumstances. Thus, a trial court should instruct jurors in medical malpractice cases on the issue of foreseeability.

*See id*. Thus, the only issue before this court is whether the appellate court correctly held that the trial court had erred in giving an instruction on foreseeability to the jury. The parties have every reason to believe that this appeal would be resolved upon a determination of only that legal issue. The resolution of that issue in favor of the appellees should end this case and lead to an affirmance of the appellate court. Instead, the majority moves on to an issue not briefed by the parties—not briefed at the specific instruction of this court.

{¶ 62} This case turns on an issue the appellees never had a chance to address. The majority opinion misleadingly states:

> The only manifestation of the jury being misled by the foreseeability instruction that was identified to the appellate court was that the jurors completed the interrogatory regarding proximate cause instead of stopping after finding that negligence had not occurred.

Majority opinion at ¶ 42. The Cromers have made no such argument in *this* court because they did not need to. Through its refusal to accept jurisdiction on the issue of prejudice, this court declared the issue settled. But the majority ignores this court's earlier, gateway determination and instead determines the case on the issue it refused to consider.

II

{¶ 63} Even if the issue of whether the jury instruction was prejudicial were properly before this court, the majority's analysis is wrong. The appellate court did address prejudice. It held that *even though* the jurors answered the proximate-cause interrogatory in favor of the hospital—that its negligence was not the proximate cause of Seth's death—the foreseeability instruction was still prejudicial. The court of appeals addressed the argument that the instruction on

26

negligence was harmless error because the jury—regardless of its finding on negligence—had found a lack of proximate cause. The court pointed out that the instruction on proximate cause was premised on whether the hospital's *negligence* had caused Seth's death and that the trial court's instruction on negligence had tainted the jury's finding on proximate cause. Thus, despite an answer to the interrogatory in favor of the hospital on proximate cause, the court held that "we cannot conclude that the trial court's improper instruction on the hospital's standard of care did not affect the ultimate outcome in this case." 2012-Ohio-5154, 985 N.E.2d 548, ¶ 26 (9th Dist.). Certainly, the appellate court properly demonstrated that prejudice sufficient to reverse the trial court's judgment existed by demonstrating that the trial court's faulty jury instruction on negligence compromised even the jury's finding on proximate cause.

III

{¶ 64} Further, that the foreseeability jury instruction was prejudicial is apparent on its face. Let us revisit the jury instruction at issue, which the nonunanimous jury (the vote was 6-2 in favor of the defendant) took into the jury room:

> In deciding whether ordinary care was used, you will consider whether the defendant should have foreseen under the attending circumstances that the natural and probable result of an act or failure to act would cause Seth Cromer's death.
>
> The test for foreseeability is not whether the defendant should have foreseen the death of Seth Cromer precisely as it happened. The test is whether under all the circumstances a reasonably cautious, careful, prudent person would have anticipated that death was likely to result to someone from the act or failure to act.

> If the defendant by the use of ordinary care should have foreseen the death and should not have acted, or if they did act, should have taken precautions to avoid the result, the performance of the act or the failure to act to take such precautions is negligence.

{¶ 65} The instruction placed the treating doctors in the position of laymen—"a reasonably cautious, careful, prudent person"—and required them to have anticipated that Seth's death was the likely result of their failure to act. Not that an extended illness or an increased hospital stay might have resulted, but death. Would a reasonably prudent person believe that a basically healthy five-year-old child would likely die during a trip to the emergency room? No—because no one wants to believe that that is possible, let alone likely.

{¶ 66} Because of the foreseeability jury instruction, the incomprehensible tragedy of Seth's death inures to the benefit of the hospital. A "reasonably cautious, careful, prudent, person" would never expect that a little boy with an earache and stomachache could be dead in a matter of hours. Certainly, anyone who could have anticipated that his or her care would result in the death of a child would have approached the child's treatment differently.

{¶ 67} The inclusion of the foreseeability instruction prejudiced the Cromers by allowing the jury to consider the treating doctors not as clinicians bound to perform their jobs within certain standards, but as laymen dealing with the unthinkable, heartbreaking death of a young child.

### Conclusion

{¶ 68} This court accepted this case pursuant to its authority under Article IV, Section 2(B)(2)(e) of the Ohio Constitution as a "case[] of public or great general interest." It is neither. It is of like kind with *Branch v. Cleveland Clinic Found.*, 134 Ohio St.3d 114, 2012-Ohio-5345, 980 N.E.2d 970, and *Hayward v.*

*Summma Health Sys./Akron City Hosp.*, 139 Ohio St.3d 238, 2014-Ohio-1913, 11 N.E.3d 243, error-correction cases without meaningful holdings that reversed appellate-court reversals of defense verdicts in medical-malpractice cases. But this case is worse; there is no error to correct that is properly before this court. At least in *Summa*, this court accepted jurisdiction to answer the question of whether the trial court's error was prejudicial, and in *Branch*, it accepted jurisdiction to determine whether the trial court had abused its discretion on certain evidentiary and jury-instruction decisions. Here, the majority decides the case on an issue over which it expressly disclaimed jurisdiction. That it decides that issue wrongly is to be expected.

_____

Hanna, Campbell & Powell, L.L.P., Gregory T. Rossi, and Rocco D. Potenza, for appellant.

Amer Cunningham Co., L.P.A., Jack Morrison Jr., Thomas R. Houlihan, and Vicki L. DeSantis, for appellees.

Bricker & Eckler, L.L.P., and Anne Marie Sferra, urging reversal for amici curiae Ohio Hospital Association, Ohio State Medical Association, and Ohio Osteopathic Association.

Paul W. Flowers Co., L.P.A., and Paul W. Flowers, urging affirmance for amicus curiae Ohio Association for Justice.

Rhonda Gail Davis and Jacquenette S. Corgan, urging affirmance for amicus curiae Summit County Association for Justice.

_____