[Cite as *Parker v. L.T.*, 2017-Ohio-7674.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| JEWELL PARKER, | : | APPEAL NO. C-160642 |
| | | TRIAL NO. A-1405855 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| L.T., | : | |
| and | : | |
| W.T., | : | |
| Defendants-Appellees, | : | |
| and | : | |
| CINCINNATI PRIMITIVE BAPTIST CHURCH, | : | |
| Defendant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: September 20, 2017

*Dennis C. Mahoney* and *J. David Bender*, for Plaintiff-Appellant,

*John R. Wykoff,* for Defendants-Appellees.

**DETERS, Judge.**

{¶1}    Plaintiff-appellant Jewell Parker appeals the judgment of the Hamilton County Court of Common Pleas granting summary judgment in favor of defendants-appellees W.T., a minor, and his father, L.T., on her claims for personal injuries.  We affirm the trial court's grant of summary judgment to L.T., but reverse its grant of summary judgment to W.T.

*Background*

{¶2}    On October 21, 2012, Parker, an 80-year-old woman, attended the morning service at the Cincinnati Primitive Baptist Church at the invitation of her elderly friend, Kenneth Mobley.  Parker had attended church services with Mobley several times prior to that day.  Each time the church had held a morning service, taken a lunch break, and then held an afternoon service.  After eating lunch, Parker and Mobley walked out the side door of the church building and into the parking lot towards the playground, which was located at the back of the parking lot.

{¶3}    The parking lot contained four rows of parking spaces.  One row of parking spaces was located next to the building.  The second and third rows of parking spaces abutted each other.  A fourth row of parking spaces was located at the back of the lot near a grassy area.  The parking lot contained space for vehicles to drive between the first and second rows and between the third and fourth rows in the parking lot.  The playground was located at the edge of the parking lot beyond the fourth row of parking spaces.  It is undisputed that the parking lot was full of vehicles.

{¶4}    Mobley stated that he is "hard of hearing" and has a bad hip, which causes him difficulty in walking, so he rarely leaves the church building between services.  Parker stated that she had visited the church before, but that she had never

2

been outside during the break between services. Mobley and Parker stated that they were unaware that some of the boys in the congregation played football in the church parking lot between the morning and afternoon church services.

{¶5}   Both Parker and Mobley stated that as they were walking from the second to the third row of vehicles in the parking lot, they heard what sounded like a herd of cattle or horses running. Once they had walked past the third row of vehicles, they stopped and looked before crossing. Mobley saw some boys standing at a distance from them in a crowd in the open area between the third and fourth rows of vehicles. Parker remembered seeing a crowd of people, but stated that she could not see what they were doing. Both Mobley and Parker described hearing the same sound like a herd of cattle or horses running. Parker stated that after she heard this noise, W.T. ran into her and knocked her down.

{¶6}   Mobley stated that he did not realize that the boys were playing football until he saw them throw the ball and W.T. jump up to catch it, which was just before W.T. came down and hit Parker on the right side. Parker couldn't recall exactly where she fell, but she stated it was nearer to the third row of parked vehicles. Both Mobley and Parker described the incident as happening "in the blink of an eye." Parker stated that she broke her hip.

{¶7}   W.T., a 15-year-old boy, stated that he was playing football with at least ten people in the church parking lot between the third and fourth rows of vehicles, because the grassy area at the back of the parking lot was really muddy and a lot of little kids liked to play there. W.T. stated that he did not see Parker before the football was thrown. He ran the length of seven parking spaces to catch a pass, and when he turned around, he started back pedaling about two parking spaces, "screamed for the ball, and then out of nowhere bumped into someone he didn't see."

3

When he turned around, he saw Parker on the ground. Mobley was standing to her right side. W.T. apologized to Parker and tried to help her to her feet, but she couldn't stand.

{¶8} W.T. stated that the boys had been playing football 20-30 minutes before Parker fell and that they played in the parking lot most Sundays. Prior to the incident, the boys had stopped the football game to permit a woman to enter her vehicle and leave the parking lot.

{¶9} Parker brought negligence claims against the church, W.T., and his father, L.T. Parker alleged that L.T. had violated his duty as both W.T.'s parent and as a deacon at the church to supervise the boys playing football in the parking lot. W.T. and L.T. moved for summary judgment, arguing that they owed no duty to Parker. They further argued that "assuming a duty was owed and breached, that Parker's claims would be barred by the affirmative defenses of primary assumption of the risk doctrine, also known as the open and obvious doctrine."

{¶10} Parker filed a memorandum opposing summary judgment. In the memorandum, Parker stated that she was withdrawing her claim against L.T. in his parental capacity. Parker alleged, however, that fact issues precluded summary judgment with respect to whether L.T., in his capacity as a church deacon, had failed to supervise the boys playing football in the parking lot. Parker further argued that fact issues precluded summary judgment in favor of W.T. and that the assumption-of-the-risk and the open-and-obvious doctrines did not bar her claims.

{¶11} The trial court granted summary judgment to W.T. and L.T. on the basis that they owed no duty to Parker, but the trial court expressly stated it was not determining whether the open-and-obvious doctrine applied to bar Parker's claims. Parker settled her negligence claim with the church.

*Summary Judgment*

**{¶12}** In a single assignment of error, Parker argues that the trial court erred by granting summary judgment to W.T. and L.T.

**{¶13}** We review the trial court's entry of summary judgment de novo, using the same standard the trial court employed. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000). Summary judgment is appropriate where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

**{¶14}** We first address the trial court's grant of summary judgment to L.T. In her brief, Parker admits that she withdrew her negligent-supervision claim against L.T. that was based on his parental duty to supervise W.T. Parker settled her negligence claim against the church. Parker does not separately argue in her brief why the trial court erred in granting summary judgment to L.T. We decline, in the absence of any argument or citation to legal authority, to address her challenge to the trial court's grant of summary judgment to L.T. We therefore, overrule the part of Parker's assignment of error challenging the trial court's grant of summary judgment to L.T. *See* App.R. 16(A)(7); *State v. Perez*, 1st Dist. Hamilton Nos. C-040363, C-040364 and C-040365, 2005-Ohio-1326, ¶ 23.

**{¶15}** We turn now to the trial court's determination that W.T. was entitled to summary judgment on Parker's negligence claim. Parker alleged that W.T. was negligent because he had failed to exercise reasonable care to avoid physically harming her while playing football in the church parking lot.

{¶16} To establish actionable negligence, Parker must show the existence of a duty, a breach of the duty, and injury proximately resulting therefrom. *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981). Parker argues the trial court erred as a matter of law in granting summary judgment when the evidence established that W.T. owed her a duty of reasonable care.

{¶17} "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation of the defendant to exercise due care toward the plaintiff." *Commerce & Industry, Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 543 N.E.2d 1188 (1989). "The minimum standard of care expected under any circumstances is to exercise that degree of care and caution that an ordinary careful and prudent person would exercise under similar circumstances." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 27.

{¶18} Whether a duty exists depends on the foreseeability of the injury. *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

> As a society we expect people to exercise reasonable precautions against the risks that a reasonably prudent person would anticipate. Conversely, we do not expect people to guard against risks that the reasonable person would not foresee. The foreseeability of the risk of harm is not affected by the magnitude, severity, or exact probability of a particular harm, but instead by the question of whether some risk of harm would be foreseeable to the reasonably prudent person. Accordingly, the existence and scope of a person's legal duty is determined by the reasonably foreseeable, general risk of harm that is involved.

*Cromer* at ¶ 24. The existence of a duty is a question of law for the court to determine. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

{¶19} Parker contends that her injury was foreseeable, and that W.T. owed her a duty of reasonable care to avoid physically harming her while he played football in the church parking lot. We agree.

{¶20} "[A]ctors engaging in conduct that creates a risk to others have a duty to exercise reasonable care to avoid causing physical harm." Restatement of the Law 3d, Torts, Section 7 (2010); *see Philadelphia Fire & Marine Ins. Co. v. Hirschfield Printing Co.*, 73 Ohio App. 27, 29, 53 N.E.2d 827 (1943) (holding that defendant owed a duty to the public to exercise reasonable care so that harm might not result to others). Here, W.T. owed Parker a duty of reasonable care because it is foreseeable that running and playing football in a crowded church parking lot would create a risk of harm to other individuals who were not participating in the football game and would be walking through the parking lot. *See Gedeon v. East Ohio Gas Co.*, 128 Ohio St. 335, 338, 190 N.E. 924 (1934) (holding a defendant owes a duty "when the injured person comes within the circle of those to whom injury may be reasonably anticipated"). W.T.'s running backward in a parking lot full of cars while not looking created the risk of a collision with Parker. W.T. moreover, recognized the risk of harm to others. He stated that he was aware that the church congregation was taking a break between services. When asked why the boys played football in the parking lot, he stated consideration was given to little kids playing in the grassy area. Thus, we agree with Parker that the trial court erred by concluding that it was not reasonably foreseeable that W.T. would cause injury to her and therefore, granting summary judgment to W.T. on the basis that he owed her no duty of care.

{¶21} Parker further argues that W.T. was not entitled to summary judgment on the basis that the affirmative defenses of the assumption-of-the-risk and the open-and-obvious doctrines barred her claims.

{¶22} As a general matter, whether someone assumes a risk or whether a danger is open and obvious are two separate inquires under the law. The doctrine of primary assumption of the risk is based on the theory that the defendant owes the plaintiff no duty as a matter of law. *See Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 432, 659 N.E.2d 1232 (1996). The doctrine applies when a plaintiff knows of a risk and decides to proceed into the perilous situation despite that danger. Whether to apply the affirmative defense of assumption of the risk presents an issue of law for the court to determine. *Id.* at 435. In moving for summary judgment, W.T. argued that Parker had proceeded into the "field of football at her own risk." We disagree. Parker was neither a participant nor a spectator of the football game. She could not be expected to foresee or accept the attendant risk of injury from the football game when she was merely walking through the parking lot. *See Thompson v. McNeill*, 53 Ohio St.3d 102, 104, 559 N.E.2d 705 (1990). Thus, we agree with Parker that W.T. was not entitled to summary judgment on this basis.

{¶23} Likewise, W.T. was not entitled to summary judgment on the basis that the open-and-obvious doctrine precluded any duty he owed to Parker. W.T. argued that he owed no duty to Parker because she had an unobstructed view of the boys, making the football game "open and obvious." The Ohio Supreme Court has limited the open-and-obvious doctrine to persons who have a property interest in the premises. *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 597 N.E.2d 504 (1992); *Eschmann v. RLA Invests., Inc.,* 1st Dist. Hamilton No. C-150576, 2016-

Ohio-3331, ¶ 6. W.T. had no property interest in the premises. Thus, W.T. was not entitled to summary judgment on this basis.

{¶24} Because we conclude that the trial court erred in granting summary judgment to W.T. on the basis that he owed no duty to Parker, we need not determine whether W.T. breached his duty of care, or whether his actions were the proximate cause of Parker's injuries. The assignment of error is sustained as to W.T. We, therefore, affirm the grant of summary judgment as to L.T., reverse the trial court's grant of summary judgment to W.T., and remand this cause for further proceedings in accordance with this opinion and the law.

Judgment affirmed in part, reversed in part, and cause remanded.

**MOCK, P.J.,** and **MILLER, J.,** concur.

Please note:

The court has recorded its own entry this date.

9