[Cite as *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2016-Ohio-7461.]

| | |
|---|---|
| STATE OF OHIO )<br>)ss:<br>COUNTY OF SUMMIT ) | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| SETH NILES CROMER, MINOR CHILD,<br>DECEASED, et al.<br><br>     Appellants<br><br>     v.<br><br>CHILDREN'S HOSPITAL MEDICAL<br>CENTER OF AKRON<br><br>     Appellee | C.A. No.     25632<br><br><br>APPEAL FROM JUDGMENT<br>ENTERED IN THE<br>COURT OF COMMON PLEAS<br>COUNTY OF SUMMIT, OHIO<br>CASE No.    CV 2008 07 4775 |

DECISION AND JOURNAL ENTRY

Dated: October 26, 2016

CARR, Judge.

**{¶1}** Appellants, Melinda Cromer, individually; and Roderick Cromer, Jr., individually and on behalf of their late son Seth; appeal from a judgment entered on a jury verdict for Children's Hospital Medical Center of Akron ("the hospital") on the Cromers' medical malpractice claim against it. This Court originally reversed the judgment for the hospital because the trial court incorrectly instructed the jury about the hospital's standard of care. *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 9th Dist. Summit No. 25632, 2012-Ohio-5154. The Ohio Supreme Court reversed that judgment, however, reasoning that the record failed to demonstrate that the Cromers suffered material prejudice from the improper instruction. *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 45. Therefore, it reversed this Court's judgment and remanded the matter for this Court to address the Cromers'

remaining two assignments of error. *Id*. at ¶ 46. Upon review of those assignments of error, this Court reverses and remands the trial court's judgment for a new trial.

I.

{¶2} The facts underlying this medical malpractice case, which were recited in more detail in the decision of the Ohio Supreme Court and this Court's original opinion, involve the death of five-year-old Seth Cromer while he was a patient at the hospital. Seth's parents brought him to the hospital on the evening of January 13, 2007, because, although he had been taking antibiotics for several days for an ear infection, his physical condition had worsened. Seth was assessed by a triage nurse and later moved to an examination room, where a doctor concluded that he was in shock. Seth was moved to another exam room that was closer to the nurses' station and had more equipment to monitor his vital signs.

{¶3} The doctor ordered the nursing staff to give Seth normal saline fluids intravenously. The evidence was not disputed, however, that a hospital nurse mistakenly gave Seth D5 ½ normal saline, which was not the correct or optimal fluid to treat his dehydration. When the emergency room doctor realized that Seth was receiving the wrong type of saline solution, he immediately ordered that the IV bag be switched to the correct fluid and ensured that Seth began receiving normal saline solution. The parties would later dispute, however, how much of the D5 ½ saline solution Seth received and what, if any, negative impact it had on his condition.

{¶4} Seth also received epinephrine intravenously while in the emergency room, and the parties would also later dispute whether the epinephrine helped or harmed his condition. Although Seth initially appeared to show signs of improvement because he became more alert, the doctor later realized that Seth's body was attempting to compensate for the shock and his

physical condition was actually declining. Consequently, the emergency room doctor ordered that Seth be transferred to the pediatric intensive care unit ("PICU").

{¶5} Shortly after Seth arrived in the PICU, the critical care doctor determined that he would probably need to be intubated and placed on a ventilator to decrease the carbon dioxide levels in his blood. The doctor first placed a central venous line to continue administering epinephrine and other medications, if needed. The doctor then placed an arterial line to draw blood for testing, which revealed that Seth was suffering from significant acidosis. Next, the doctor intubated Seth and ordered an echocardiogram. During the echocardiogram procedure, Seth went into cardiac arrest. Cardiopulmonary resuscitation was unsuccessful and Seth was pronounced dead at 4:05 a.m.

{¶6} The Cromers filed this medical malpractice action against the hospital and several individual defendants. The individual defendants were later dismissed and the case proceeded to trial against the hospital. Although all the experts agreed that Seth died from coronary failure, they disputed whether his heart failure was caused by an unknown, pre-existing heart defect or the hospital's failure to properly treat septic shock that had developed from Seth's viral infection.

{¶7} According to the results of Seth's autopsy, he died of heart failure that was the combined result of a pre-existing narrowing of his left coronary artery and a viral infection that had spread to his heart. The hospital's experts testified that a pre-existing heart problem caused Seth's acidosis and eventual death and that there was nothing more that the treating physicians and hospital staff could have done to save his life.

{¶8} The Cromers' medical expert testified, however, that a pre-existing heart condition was not the cause of Seth's death. Instead, the Cromers' expert opined that Seth died because the hospital failed to appropriately treat him, so his septic shock progressed to severe

cardiac and respiratory failure. She testified that the hospital departed from the standard of care by not intubating Seth sooner, by not assessing him and giving him intravenous fluids sooner, and by giving him the wrong intravenous fluids.

{¶9} After the presentation of evidence, the trial court submitted written interrogatories and general verdict forms to the jury. In response to the first interrogatory about whether the plaintiffs had proven that the hospital was negligent, the jury answered, "no." Although the trial court had instructed the jury not to answer the remaining interrogatories if it found that the hospital was not negligent, it responded, "no" to an additional interrogatory about whether the hospital's negligence had caused Seth's death. The jury also returned a general verdict for the hospital. The trial court accepted the jury's verdict and entered judgment for the hospital.

{¶10} The Cromers later moved for a new trial, asserting that the judgment was against the manifest weight of the evidence and that the jury interrogatories were inconsistent, but the trial court denied their motion. The Cromers appealed and raised three assignments of error. Because this Court originally sustained their first assignment of error, it did not reach the merits of their remaining assignments of error because they had been rendered moot. Following the reversal and remand by the Ohio Supreme Court, this Court now reviews the Cromers' second and third assignments of error.

II.

**APPELLANTS' ASSIGNMENT OF ERROR II**

THE JURY'S VERDICT IN THIS MATTER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**APPELLANTS' ASSIGNMENT OF ERROR III**

THE COURT ERRED IN FAILING TO GRANT APPELLANTS' MOTION FOR A NEW TRIAL.

{¶11} The Cromers' second assignment of error is that the jury's verdict was against the manifest weight of the evidence. Because that argument is also raised through their third assignment of error, this Court will address them together. The Cromers' third assignment of error is that the trial court erred in failing to grant a new trial because the jury's answers to the special interrogatories were inconsistent and/or because the jury's verdict was against the weight of the evidence. This Court will confine its review to the Cromers' manifest weight argument because it is dispositive.

**Manifest Weight Standard of Review**

{¶12} We begin by clarifying the standard under which we review this assignment of error. The parties argue this assigned error under the civil manifest weight standard as set forth in *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279 (1978), but the Ohio Supreme Court has since explained that the "competent, credible evidence" standard applies to a challenge to the sufficiency of the evidence supporting a verdict, not the manifest weight. In *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17, the Court held that the standard of review set forth in *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997), applies in civil as well as criminal cases. In assessing whether a jury's verdict is against the manifest weight of the evidence, this Court examines the entire record, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the [verdict] must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). In other words, we review the verdict to determine whether the jury lost its way in concluding that "the *greater amount of credible evidence,* offered in a trial,

[supported] one side of the issue rather than the other." (Emphasis in original.) *Thompkins* at 387.

**The Verdict**

{¶13} The verdict in this case was a general verdict for the hospital on the Cromers' medical malpractice action against it. The parties disagree, however, about whether the general defense verdict represents judgment for the hospital on all of the elements of the Cromers' malpractice claim or only on the issue of negligence (duty and breach). The hospital focuses its argument on whether the Cromers proved that a breach of duty by the hospital caused Seth's death, implicitly arguing that the jury did not lose its way in entering a verdict for the hospital on all of the determinative issues (duty, breach, causation, and damages). On the other hand, the Cromers assert that the jury's verdict for the hospital was based solely on its finding that the hospital did not breach a duty of care to Seth Cromer. Consequently, because the jury did not reach the issue of causation, the Cromers assert that the "verdict" upon which this manifest weight review must focus is the jury's finding that the hospital breached no duty to Seth. This Court agrees.

{¶14} If the jury's verdict had not been tested by special interrogatories, this Court's manifest weight review would necessarily be confined to the jury's ultimate verdict on all of the determinative issues, including causation. *See, e.g.*, *Mid-Ohio Mechanical, Inc. v. Eisenmann Corp.*, 5th Dist. Guernsey Nos. 07 CA 000035 and 08 CA 00012, 2009-Ohio-5804, ¶ 78, citing *Bobb Forest Prods., Inc. v. Morbark Industries, Inc.*, 151 Ohio App.3d 63, 2002-Ohio-5370, ¶ 64 (7th Dist.). In this case, however, the jury's verdict was tested by special interrogatories, which enables a reviewing court to conduct a more pinpointed review of the jury's factual findings. "The essential purpose to be served by interrogatories is to test the correctness of a

general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial." *Cincinnati Riverfront Coliseum, Inc. v. McNulty, Co.*, 28 Ohio St.3d 333, 336-337 (1986).

{¶15} In *Miller v. McAllister*, 169 Ohio St. 487, 494 (1959), the Ohio Supreme Court defined "determinative issues" as "ultimate issues which when decided will definitely settle the entire controversy between or among the parties, so as to leave nothing for the court to do but to enter judgment for the party or parties in whose favor such determinative issues have been resolved by the jury." In this medical malpractice action, the determinative issues included negligence, proximate cause, and damages. *See Richley v. Liechty*, 44 Ohio App.2d 359, 363 (3d Dist.1975), citing *Miller*; *Stant v. Lin*, 3d Dist. Allen No. 1-01-90, 2002 WL 396527, *2 (Mar. 13, 2002). Because the jury was asked to complete special interrogatories pertaining to the determinative issues of negligence, causation, and damages, this Court's review of the weight of the evidence is "confined to those determinative issues on which the jury rest[ed] its verdict and not on whether the evidence could support the same general verdict had the jury made other findings on the determinative issues." *Seeley v. Rahe*, 3d Dist. Hancock No. 5-83-8, 1983 WL 4544, *5 (Dec. 21, 1983), *aff'd,* 16 Ohio St.3d 25 (1985). *See also Wheatley v. Howard Hanna Real Estate Servs.*, 9th Dist. Lorain No. 13CA010505, 2015-Ohio-2196, ¶ 14.

{¶16} The special interrogatories in this case reveal that the jury entered a general verdict for the hospital based on its finding on the first determinative issue of negligence. Because it found that the hospital did not breach any duty of care to Seth, the jury did not proceed to weigh the evidence on the remaining determinative issues of causation and damages.

{¶17} Although the hospital points to the fact that the jury answered the third interrogatory pertaining to causation, as the Ohio Supreme Court noted, that interrogatory answer

was of no significance because the jury had been instructed not to answer it and the issue of causation had been "mooted" by the jury's finding on the determinative issue that the hospital was not negligent. *Cromer*, 2015-Ohio-229, at ¶ 42. In other words, given the jury's written finding that there had been no negligence by the hospital, it could not plausibly find that the hospital's negligence had caused Seth's death.

{¶18} Consequently, this Court's review of whether the judgment for the hospital is against the manifest weight of the evidence is confined to the jury's finding on the first determinative issue that the Cromers failed to prove that the hospital breached its standard of care to Seth.

### Review of the Evidence

{¶19} As to the hospital's alleged breach of duty to Seth, the Cromers presented expert testimony that hospital employees had departed from the standard of care in several respects: by not assessing Seth and treating him with intravenous fluids sooner; by initially giving Seth the wrong IV saline solution; and by not intubating him sooner. On appeal and through their motion for a new trial, the Cromers have asserted that they presented undisputed evidence that a nurse breached her standard of care by giving Seth the wrong IV fluids.

{¶20} In reviewing the evidence pertaining to this alleged aspect of the hospital's negligence, we begin by emphasizing that the parties do not dispute the facts pertaining to this issue. Although the parties presented conflicting evidence about some of the facts preceding Seth's death, the evidence was not disputed that the emergency room doctor ordered that Seth be given normal saline solution intravenously, but a nurse mistakenly administered D5 ½ normal saline solution instead.

{¶21} The sole dispute between the parties is whether the jury was required to find that the nurse's act of giving Seth the wrong saline solution constituted a breach of her standard of care. The trial court instructed the jury about a nurse's standard of care, in relevant part:

> A nurse commits malpractice when she fails to exercise that degree of skill and knowledge normally applied by members of that profession in similar circumstances.
>
> If you find by the greater weight of the evidence that defendant by and through its employees, the nurses, failed to meet the standard of care, then you shall find the defendant was negligent.

{¶22} The Cromers contend that they presented undisputed evidence that the nurse's act of giving Seth the wrong IV fluids constituted a breach of her standard of care and, for that reason, the jury lost its way by finding that the hospital was not negligent. In denying the Cromers' motion for new trial on this basis, the trial court rejected this argument and concluded that the hospital had presented "substantial evidence" that the nurse did not breach her standard of care by administering the wrong saline solution to Seth. The hospital also argues that it presented evidence to contradict the Cromer's evidence that the nurse breached her standard of care in this regard.

{¶23} This Court's review of the record failed to reveal any evidence to dispute or undermine the credibility of the opinion of the Cromers' medical expert that the nurse's act of failing to follow a doctor's orders and instead giving Seth the wrong saline solution constituted a departure from the standard of care. No one questioned the credibility of that expert opinion either through cross-examination of the Cromers' expert or through the testimony of another witness. Although some of the hospital's witnesses did not directly concede that the nurse had been negligent, none of them testified that her act of disobeying a doctor's orders and/or administering the wrong saline solution to Seth fell within her standard of care.

{¶24} The emergency room doctor testified that he ordered that normal saline solution be administered to Seth because "it is generally understood that we use normal saline [to treat dehydration]." He further testified that he did not order D5 ½ saline and that he would not have authorized that fluid because it was not the optimal fluid to treat Seth. The nurse herself testified that she had attempted to follow the doctor's order and thought that the IV bag that she grabbed "said normal saline." She conceded that she had made a "mistake" by administering the wrong saline solution to Seth. Other defense witnesses similarly characterized her action as an "error" or a "mistake."

{¶25} One of the hospital's medical experts described D5 ½ saline solution as the "second fluid," explaining that it is not used as the first fluid to treat dehydrated patients but is used as a maintenance fluid after the patient is rehydrated with normal saline. He later conceded that a nurse giving a patient the wrong fluid was a "medical error" because it was not what the doctor ordered. He further agreed that a nurse giving a patient the wrong medication is a departure from the standard of care.

{¶26} Given that the expert testimony on this issue was not contradicted by other evidence, nor was the credibility of the expert's opinion challenged in any other manner, the jury was not free to simply disregard it. Although the trier of fact may sometimes reject the opinion testimony of an expert witness, there must be reason for it to do so. The trier of fact cannot "weigh" witness testimony and assess its "credibility," unless there are conflicts in the evidence or questions of credibility to be resolved. *See Thompkins* at 387, citing *Martin* at 175. For example, the trier of fact may reject an expert's opinion based on the contradictory opinion testimony of another expert or the expert's own concessions during cross-examination that question the credibility of his opinion. *See, e.g., State ex rel. Unger v. Indus. Comm.*, 70 Ohio

St.3d 672, 676 (1994); *State v. Pierce*, 64 Ohio St.3d 490, 500-501 (1992). The trier of fact "may not disregard credible and uncontradicted expert testimony[.]" *State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, ¶ 74.

**{¶27}** Therefore, because the jury heard undisputed, credible expert opinion testimony that the nurse giving Seth the wrong saline solution was a departure from her standard of care, it lost its way in finding that the Cromers failed to prove that the hospital breached its duty of care to Seth. The Cromers' second assignment of error is sustained and their third assignment of error is sustained insofar as it asserts that the jury's verdict was against the manifest weight of the evidence.

III.

**{¶28}** The Cromers' second and third assignments of error are sustained to the extent that they challenge the evidence supporting the trial court's judgment. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for a new trial.

Judgment reversed and
the cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

MOORE, J.
CONCURS.

HENSAL, P. J.
DISSENTING.

{¶29} I do not agree that the verdict in this case is against the manifest weight of the evidence. Even if I accept the majority's position that the jury was required to believe undisputed expert testimony that a nurse breached her duty by giving Seth the wrong IV fluids, it is the jury's "verdict" and the trial court's ultimate "judgment" that is the focus of our manifest weight review, not the jury's finding on a single element of the claim. This Court must consider the verdict as a whole to determine whether evidence on every element (duty, breach, causation, and damages) met the burden of persuasion. *See Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 19. "The issue then facing this Court is not whether the evidence supported the jury's interrogatory answers, but whether the evidence supported the judgment in favor of the [hospital]." *Heise v. Orra*, 8th Dist. Cuyahoga No. 66172, 1995 WL 79794, *2 (Feb. 23, 1995).

{¶30} Notably, the Cromers do not point to undisputed evidence about any other aspect of this case and there was no expert testimony that a nurse giving Seth the wrong IV fluids caused his death. Instead, the Cromers' expert opined that Seth's death had been caused by

several errors made by hospital employees in the timing of his treatment. There were disputes in both the factual and expert testimony about whether the hospital breached its standard of care by not treating Seth sooner with IV fluids and/or intubation. Moreover, the experts sharply disputed whether any of those potential breaches of care caused Seth's death. Therefore, the Cromers failed to demonstrate that the jury lost its way by entering a general verdict for the hospital on their medical malpractice claim against it.

{¶31} Because I do not agree that the verdict should be reversed on that basis, I would proceed to address the Cromers' argument that the trial court also erred in denying their motion for a new trial based on the jury's interrogatory answers. The Cromers asserted that the jury interrogatory answers were inconsistent because, after answering "no" to the first interrogatory about whether the hospital was negligent, despite the trial court's instructions not to answer the remaining interrogatories, the jury completed the third interrogatory and responded that the Cromers had failed to prove that the hospital's negligence caused Seth's death.

{¶32} Although the Cromers raised this issue in their motion for new trial, they raised no objection before the verdict was accepted and the jury was dismissed. Consequently, they forfeited all but plain error. *Gamble v. Summit Cty. Dept. of Jobs and Family Servs., Inc.*, 9th Dist. Summit No. 21450, 2004-Ohio-193, ¶ 7. The Cromers have failed to argue or demonstrate plain error. In fact, they have failed to demonstrate any error.

{¶33} A party challenging a general verdict must show that the "special findings, when considered together, are inconsistent and irreconcilable with the general verdict." *Becker v. BancOhio Nat. Bank*, 17 Ohio St.3d 158, 163 (1985), quoting *Prendergast v. Ginsburg*, 119 Ohio St. 360 (1928), paragraph one of the syllabus. The jury found no negligence, no causation,

and entered a general verdict for the hospital, all of which were consistent. *See Turner v. Elk & Elk, L.P.A.*, 8th Dist. Cuyahoga No. 96271, 2011-Ohio-5499, ¶ 66.

{¶34} For these reasons, I would overrule the Cromers' remaining assignments of error and affirm the judgment of the trial court. Therefore, I respectfully dissent.


APPEARANCES:

JACK MORRISON, JR., THOMAS R. HOULIHAN, and VICKI L. DESANTIS, Attorneys at Law, for Appellants.

GREGORY R. ROSSI and GREGG A. PEUGEOT, Attorneys at Law, for Appellee.