HENSAL, P.J., CONCURRING.
 

 {¶ 45} I agree that the trial court correctly denied the estate's motion for judgment notwithstanding the verdict. Dr. Sing testified that, even if Defendants had sent Mr. Scott to an emergency room immediately, its doctors would have referred him to a cardiologist for any tests he required, which is what the Defendants did. Dr. Sing acknowledged that when Mr. Scott had a prior cardiac catheterization, the procedure did not occur until nine days after a problem was first detected in Mr. Scott. Dr. Blatt also acknowledged that Mr. Scott had previously gone through the cardiac work-up that he said should have occurred in this case and that Mr. Scott was not scheduled for a catheterization until 10 days after that work-up was complete. Defendants further point out that their cardiology expert testified that catheterization is not the first step in treating a patient, that he would have had a patient like Mr. Scott undergo a stress test, and that the stress test would probably have been scheduled for a week after he had first seen the patient. All of this testimony suggests that, even if Defendants had sent Mr. Scott to the emergency room, it might have been a week or more before he underwent a catheterization. Because Mr. Scott died only two days after he was treated by Defendants, the procedure would not have been completed in time to save his life. Accordingly, viewing all of the testimony and other evidence presented in a light most favorable to Defendants, I cannot say that reasonable minds could only come to the conclusion that Defendants' breach of the standard of care was the proximate cause of Mr. Scott's death.
 
 Catalanotto v. Byrd,
 
 9th Dist. Summit No. 27302,
 
 2015-Ohio-277
 
 ,
 
 2015 WL 340860
 
 , ¶ 8, citing Civ.R. 50(B). I also agree that the verdict is not against the manifest weight of the evidence, that the trial court correctly denied the motion for new trial, and that the estate forfeited its jury-interrogatory argument. I, therefore, respectfully concur in the judgment.
 

 CARR, J., CONCURRING IN PART, AND DISSENTING IN PART.
 

 {¶ 46} I respectfully dissent from the majority's judgment addressing the estate's assignments of error as I would conclude that the trial court did err in failing to grant the estate's motion for JNOV. However, I concur in judgment with respect to the majority's resolution of the cross-assignment of error.
 

 {¶ 47} "A medical-malpractice claim requires the plaintiff to 'prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence.' "
 
 Segedy v. Cardiothoracic & Vascular Surgery of Akron
 
 ,
 
 182 Ohio App.3d 768
 
 ,
 
 2009-Ohio-2460
 
 ,
 
 915 N.E.2d 361
 
 , ¶ 11 (9th Dist.), quoting
 
 Roberts v. Ohio Permanente Med. Group, Inc.
 
 ,
 
 76 Ohio St.3d 483
 
 , 485,
 
 668 N.E.2d 480
 
 (1996). "Although the trier of fact may sometimes reject the opinion testimony of an expert witness, there must be reason for it to do so. The trier of fact cannot 'weigh' witness testimony and assess its 'credibility,' unless there are conflicts in the evidence or questions of credibility to be resolved."
 

 Cromer v. Children's Hosp. Med. Ctr. of Akron,
 

 2016-Ohio-7461
 
 ,
 
 64 N.E.3d 1018
 
 , ¶ 26. "For example, the trier of fact may reject an expert's opinion based on the contradictory opinion testimony of another expert or the expert's own concessions during cross-examination that question the credibility of his opinion."
 
 Cromer
 
 at ¶ 26. However, "[t]he trier of fact 'may not disregard credible and uncontradicted expert testimony[.]' "
 

 Id.
 

 , quoting
 
 White
 
 at ¶ 74.
 

 {¶ 48} Pursuant to Civ.R. 59(B), construing the evidence in a light most favorable to Dr. Hensley-Buis and McCluskey, M.D. & Associates, I would conclude that the trial court did err in denying the estate's motion for a JNOV. The estate presented a prima facie case of wrongful death. Further, the jury agreed that Ms. Wolf and Dr. Hensley-Buis breached the standard of care. The jury found that Dr. Hensley-Buis should have sent Mr. Scott directly to the emergency room and that Ms. Wolf failed to follow Dr. Hensley-Buis' recommendation concerning sending Mr. Scott to the emergency room. Additionally, the estate presented expert testimony tying the failure to send Mr. Scott to the emergency room to his death. Dr. Hensley-Buis and McCluskey, M.D. failed to rebut the estate's experts' proximate cause evidence. No alternate proximate cause was presented, nor can it be said that, through cross-examination, Dr. Hensley-Buis and McCluskey, M.D. challenged the estate's experts as to proximate causation or caused them to recant their testimony.
 
 See
 

 Wilson v. Ahn,
 
 1st Dist. Hamilton No. C-020615,
 
 2003-Ohio-4305
 
 ,
 
 2003 WL 21946756
 
 , ¶ 20. Moreover, to the extent that Dr. Rozman testified that nothing Ms. Wolf did or failed to do contributed to Mr. Scott's death, and to the extent Dr. Hensley-Buis testified similarly with respect to her own care, such testimony is conclusory and insufficient to constitute competent evidence to rebut the proximate causation evidence presented. Further, such testimony, when read in context, at its core, focused on the actions or inactions of the medical personnel and essentially amounted to testimony addressing the standard of care. The crux of Dr. Hensley-Buis' and McCluskey, M.D. & Associates' case was that Dr. Hensley-Buis and Ms. Wolf did not breach the standard of care, and, because of that fact, their actions or inactions likewise could not have been the proximate cause of Mr. Scott's death. The defense expert testimony did not expressly address whether Mr. Scott would have survived, assuming that he should have been sent to the emergency room.
 

 {¶ 49} The concurrence notes that, even if Mr. Scott had been referred to the emergency room, much of the testing would not have been conducted until several days later. As Mr. Scott passed away before that testing would have been conducted, the concurrence theorizes that sending Mr. Scott to the emergency room would not have prevented his death. However, that reading of the estate's experts' testimony fails to consider the full scope of the testimony presented. Dr. Sing averred that if Mr. Scott had been sent to the emergency room, he "believe[d] [Mr. Scott] would have been stabilized in terms of intravenous for any emergency, any quick disruption in his cardiac rhythm. If his heart stopped, they could have handled it right there. They would have gotten to the bottom of the chest pain. They would have seen the blockage. He would have been extended and [Dr. Sing] th[ought] he would have survived this whole thing." In addition, Dr. Blatt testified that, based upon his review of Mr. Scott's chart and the depositions, Mr. Scott, at a minimum, "required further observation" and that that type of observation would have taken place at an emergency room. Thus, even if Mr. Scott would have not have received all the testing prior to his death, there is
 nothing in the record that suggests that Mr. Scott would have been sent home from the emergency room or hospital prior to his death. Instead, the experts' testimony suggests that if Mr. Scott had been sent to the emergency room, he would have been observed and monitored and his fatal heart attack could have been prevented or timely treated.
 

 {¶ 50} Accordingly, I would conclude that Dr. Hensley-Buis and McCluskey, M.D. & Associates failed to present sufficient evidence to rebut the estate's evidence of proximate cause. I see no basis in the record for the jury to reject the estate's expert's testimony concerning proximate cause.
 
 See
 

 Cromer,
 

 2016-Ohio-7461
 
 ,
 
 64 N.E.3d 1018
 
 , at ¶ 26, quoting
 
 White
 
 ,
 
 118 Ohio St.3d 12
 
 ,
 
 2008-Ohio-1623
 
 ,
 
 885 N.E.2d 905
 
 , at ¶ 74 ("The trier of fact 'may not disregard credible and uncontradicted expert testimony[.]' "). Thus, the estate was entitled to have the motion for JNOV granted, and I would therefore sustain the estate's first assignment of error.
 

 {¶ 51} This resolution of the first assignment of error would render the estate's remaining assignments of error moot, and I would thus decline to address them.
 
 See
 
 App.R. 12(A)(1)(c). Because the estate was entitled to JNOV with respect to the conduct of both Dr. Hensley-Buis and Ms. Wolf, the matter should be remanded for a determination of damages. As only after the damages are determined could McCluskey, M.D. & Associates even know whether it was prejudiced by the trial court's failure to grant it a directed verdict with respect to Ms. Wolf's conduct, its cross-assignment of error is premature. Accordingly, I would decline to address the cross-assignment of error as well.