O’Neill, J.,
dissenting.
{¶ 40} Respectfully, I dissent.
{¶ 41} The law resolving this case is clear, and I would dismiss the matter as having been improvidently accepted. A trial court is “obligated to provide jury instructions that correctly and completely state the law” when those instructions are “warranted by the evidence presented in a case.” Cromer v. Children’s Hosp. Med. Ctr. of Akron, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 22. While we afford trial courts “broad discretion to decide how to fashion jury instructions,” we still require courts to “ ‘give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.’ ” State v. White, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, quoting State v. Comen, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus.
{¶ 42} These rules of course presume that juries are the fact-finders. That is not the approach taken by the majority. The majority accepts only those facts found in the record that lead to a verdict in favor of appellant, Ford Motor Company.
{¶ 43} The record, which the majority says contains a “paucity of evidence,” actually demonstrates that there were 34 similar collisions causing burns or death of vehicle occupants. In six of these collisions, the fuel-sending unit detached as it did in the accident in which appellee Ross Linert was injured. Those facts, standing alone, trigger the duty to warn after the sale. After this police car was sold and delivered, Ford had a plethora of information, but users did not. There was uncontroverted evidence of six nearly identical accidents.
{¶ 44} Absent any additional evidence of similar accidents, the Supreme Court of Ohio now ratifies the trial court’s decision to take this vital weighing process *481 away from the jury. Juries may make inferences from the evidence presented to them. Hurt v. Charles J. Rogers Transp. Co., 164 Ohio St. 329, 130 N.E.2d 820 (1955), paragraph three of the syllabus. In this case, the jury heard that there had been roughly a quarter-million Crown Victoria Police Interceptors (“CVPIs”) on the road in the year Linert’s CVPI was manufactured. The jury heard that before Linert’s injury, 34 similar rear-impact collisions involving similar vehicles had resulted in burn injuries or deaths. The jury heard that these accidents occurred across many model years of the Panther-platform class of vehicles but that the placement and design of the fuel tanks remained the same within this class from 1979 until 2005. The jury heard that in six of these incidents, the fuel-sender unit dislodged, as it did in Linert’s accident. The jury also heard that just after delivery and before Linert’s accident, Ford spent several months on a project to strengthen the joint attaching the fuel sender to the fuel tank. This attempt to correct a known defect came after hearing about how the fuel system had performed in actual car accidents. This evidence is clearly enough to infer, one way or the other, about the likelihood of a risk inherent in the design of the CVPI fuel tank. That evidence triggers the jury’s inquiry whether Ford made a reasonable decision not to warn the consumers who had already bought its products. How could we hold otherwise?
{¶ 45} Remarkably, the majority also holds without citation to any authority from this court that information presented to the jury about Ford’s presale knowledge and conduct regarding design of fire-suppression and fuel-tank-protection systems was not relevant to the plaintiffs’ postsale-failure-to-warn claims and can be relevant only to presale claims. I could not disagree with the majority more vehemently about the relevance of this evidence, given the plain language of the statutes creating the two causes of action. Compare R.C. 2307.76(A)(1)(a) with R.C. 2307.76(A)(2)(a) (identical language regarding knowledge of a risk in both provisions). But relying on mere logic about what could be relevant to which claim and why, the majority has decided a better meaning for R.C. 2307.76(A)(2)(a)—or at least a meaning better liked. R.C. 2307.76(A)(2) requires knowledge of a risk associated with a product “at a relevant time after it left the control of its manufacturer.” I disagree with the majority’s view of R.C. 2307.76(A)(2)(a) because agreeing would require me to countenance the judicial fiction that after selling these cars, Ford somehow “un-knew” whatever it knew before the sale.
{¶ 46} What Ford did or did not do regarding the CVPI fuel tank before the sale of Linert’s cruiser is important background evidence that would give a jury some context about Ford’s developing understanding of the risks regarding its design before the sale, after the vehicle was delivered, and just before the fiery crash that injured Linert. I do not attribute bad faith to Ford. Surely its actions indicate that it was commendably trying, in the interest of customer safety, to *482 solve a known problem. It was entirely logical for the jury to have inferred from the evidence in this matter that Ford knew the risks inherent in its fuel-tank and fuel-sender-connection design before sale. It is entirely possible that the jury believed that the seriousness of harm did not become apparent enough to create a duty to warn until sometime- after that sale and before Linert’s accident. And that is why the jury should have been instructed on the postmarket duty to warn. In the absence of such an instruction, the jury verdict in this case reflected blind obeisance to the trial court’s limited instruction and was rendered predictably in favor of Ford.
SL Chapman, L.L.C., Robert W. Schmieder II, and Robert J. Evola; and Green Haines Sgambati Co., L.P.A., and Richard A. Abrams, for appellees.
Thompson Hiñe, L.L.P., Elizabeth B. Wright, and Conor A. McLaughlin; and Squire Patton Boggs, L.L.P., Pierre H. Bergeron, and Larisa M. Vaysman, for appellant.
Rourke & Blumenthal, L.L.P., Johnathan R. Stoudt, and Robert P. Miller, urging affirmance for amicus curiae Ohio Association for Justice.
{¶ 47} The plaintiffs may not have presented enough evidence to convince the jury that Ford had a duty to warn after sale. I take no position on that. But we will never know what a properly charged jury would have done because the plaintiffs’ evidence was not sufficient to convince this court to order the trial court to explain the statutorily mandated postmarket duty to warn. Ultimately, citizens decide whether a manufacturer made a reasonable or an unreasonable postmarket decision about how risky a design might be. They weigh that solemn decision in light of the likelihood of harm and the seriousness of that harm as demonstrated by the evidence before them.
{¶ 48} We, as justices of a court of law, should not be fact-finders here. The applicable legal standard is to “ ‘give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.’” White, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, quoting Comen, 50 Ohio St.3d 206, 553 N.E.2d 640, at paragraph two of the syllabus. The appellate court clearly applied this standard below: “[Ajppellants presented evidence on their post-marketing failure to warn claim.” 2014-Ohio-4431, 20 N.E.3d 1047, ¶ 26. “This was adequate evidence to put appellants’ post-marketing failure to warn claim before the jury.” Id. at ¶ 29. Seeing that the law was properly applied below, and seeing that the majority merely disagrees with the court of appeals regarding the facts that may be found in the record, I would dismiss the case as having been improvidently accepted.
{¶ 49} Respectfully, I dissent.
*483 Tucker Ellis, L.L.P., John P. Palumbo, and Benjamin C. Sassé, urging reversal for amicus curiae Product Liability Advisory Council, Inc.
Jones Day, Yvette McGee Brown, Chad A. Readier, and Kenneth M. Grose, urging reversal for amici curiae Chamber of Commerce of the United States of America, National Association of Manufacturers, National Federation of Independent Small Business Legal Center, Ohio Chamber of Commerce, and Ohio Manufacturers’ Association.