[Cite as *State v. Curtis*, 2023-Ohio-1652.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2022CA00036 |
| ALTON CURTIS | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of Common Pleas, Case No. 2021-CR-1124A |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 15, 2023 |
| APPEARANCES: | |

For Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
Stark County, Ohio

VICKI L. DeSANTIS
Assistant Prosecuting Attorney
Appellate Division
110 Central Plaza South – Suite #510
Canton, Ohio 44702-1413

For Defendant-Appellant

FELICE HARRIS
Harris Law Firm, LLC
6480 E. Main Street – Suite A
Reynoldsburg, Ohio 43068

*Hoffman, P.J.*

{¶1} Defendant-appellant Alton Curtis appeals the judgment entered by the Stark County Common Pleas Court convicting him following jury trial of trafficking in cocaine with a major drug offender specification (R.C. 2925.03(A)(C)(4)(g), R.C. 2941.1410(A)), and possession of cocaine with a major drug offender specification (R.C. 2925.11(A)(C)(4)(f), R.C. 2941.1410(A)) and sentencing him to term of incarceration of 11 to 16.5 years.  Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On May 23, 2021, Agent Mark McMurtry of the FBI received a tip someone might be trying to distribute cocaine in Canton, Ohio. Agent McMurtry is the coordinator of the FBI Safe Streets Task Force, which combines federal, state and local law enforcement in Stark County to investigate drug trafficking. Agent McMurtry contacted other officers in the task force.

{¶3} Canton Police Officer Brandon Schmidt was assigned to the task force. Acting on Agent McMurtry's tip, the task force located the car in question parked in Plain Township. When the vehicle began driving south toward Canton, Officer Schmidt followed the vehicle. He observed the vehicle change lanes without using a turn signal. Officer Schmidt was in plain clothes and driving an unmarked car, so he did not stop the car, but instead radioed for assistance.

{¶4} Patrolman Anthony Angelo of the Canton Police Department stopped the vehicle after hearing the radio alert. Cortney Curtis was driving the vehicle. When the vehicle was stopped by police, Cortney ran from the car, and was apprehended by officers.  As he fled, he dropped his cell phone, which was recovered by police. Two other

passengers were inside the car: Appellant, who is Cortney's nephew, was seated in the front passenger seat, and another man was seated in the back seat.

{¶5} Officers called for a K9 unit to conduct a sniff of the car. Officer David Samuels and his dog Boss responded to the call. Boss alerted on the car. Officers then searched the car, and located a black backpack on the backseat which contained about a kilogram of a packaged product. Officers found an assault rifle under a towel on the backseat. The substance in the package found in the backpack was later determined to be cocaine. A cell phone, later determined to belong to Appellant, was also recovered from the passenger side dash of the vehicle. A veterinarian bill and a medical bill in Cortney's name were also found in the vehicle.

{¶6} Agent McMurtry and Officer Schmidt interviewed Appellant at the Canton Police Department. Although the officers believed recording equipment was operating during the interview, they later discovered the equipment was not functioning properly. However, both officers took notes on the interview. During the interview, Appellant admitted he traveled from Houston, Texas to Ohio for the purpose of bringing narcotics to Canton. Appellant told officers he had two kilograms of cocaine. He admitted the backpack belonged to him. Appellant admitted the cocaine in the backpack was the cocaine he brought from Houston, but denied putting it in the backpack. He denied any knowledge there was a gun in the car. Appellant told police where they could locate the second kilogram of cocaine in his vehicle.

{¶7} Officers were unable to interview Cortney because he became too emotional, laying on the floor and crying. Cortney lamented his life was over, and he had screwed up.

{¶8} Officers determined the vehicle Cortney was driving was registered to Cortney's girlfriend. The third man in the vehicle told officers he was at Cortney's house spending time there before Appellant arrived, then went along with them in the car. He was not criminally charged.

{¶9} Officers obtained a search warrant for Cortney's home and for the car Appellant drove from Texas to Ohio. Officers were unable to locate the second kilogram of cocaine in Appellant's car. In Cortney's house officers found a second firearm, as well as a digital scale of a type often used in drug trafficking.

{¶10} The next day, officers again talked to Appellant at the Stark County Jail. Appellant gave consent to search his cell phone which was found in the vehicle, and gave the officers the phone number and the password for the phone. Both Appellant's phone and the phone Cortney dropped when he fled the scene were turned over to the Jackson Police Department for extraction.

{¶11} Detective Matt Demyan of the Jackson Township Police Department performed data extractions on the two cell phones. He placed the extracted data from the phones on an external zip drive, and generated reports. Officer Schmidt received the zip drive. He found text messages which matched between the two phones. The messages contained language which Officer Schmidt, in his experience with the task force, found related to discussion of buying and selling cocaine. In some of the messages, Appellant referred to Cortney as "Unc." The messages included discussion of the street value of cocaine, the amount of cocaine Appellant would bring from Texas, and how much cocaine they could sell. Videos attached to Appellant's text messages showed the kilos of cocaine he referred to in his messages.

**{¶12}** Appellant was indicted by the Stark County Grand Jury with trafficking in cocaine and possession of cocaine, each with major drug offender specifications. The case proceeded to a joint jury trial with Cortney Curtis in the Stark County Common Pleas Court.  The jury found Appellant guilty of trafficking in cocaine and possession of cocaine, with the major drug offender specifications. The trial court convicted Appellant in accordance with the jury's verdict. The trial court found the convictions merged, and the State elected to have Appellant sentenced for trafficking in cocaine. The trial court sentenced Appellant to an indeterminate term of 11 to 16.5 years incarceration.  It is from the March 2, 2022 judgment of the trial court Appellant prosecutes his appeal, assigning as error:


I. ALTON CURTIS WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

II. ALTON CURTIS'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WERE DENIED WHEN THE TRIAL COURT FAILED TO ISSUE A PROPER INSTRUCTION ON COMPLICITY.

III. ALTON CURTIS'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I.

**{¶13}** In his first assignment of error, Appellant argues his trial counsel was ineffective.

**{¶14}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id*.

### Motion to Suppress

**{¶15}** Appellant argues counsel was ineffective for failing to file a motion to suppress on the basis the stop of the vehicle was not supported by probable cause. He argues the stop was unlawful because Officer Schmidt witnessed the traffic violation, but was not the officer who stopped the vehicle.

**{¶16}** In order to satisfy the prejudice prong of the *Strickland* test, a defendant must demonstrate that there was a reasonable probability the motion to suppress would have been granted. *State v. Sanders*, 5th Dist. No. 15-COA-33, 2016-Ohio-7204, 76 N.E.3d 468, ¶ 31.

**{¶17}** Appellant argues the stop was unlawful because Officer Schmidt witnessed the vehicle change lanes without using a turn signal, but a different officer effectuated the

stop.  However, the collective knowledge between law enforcement officers may form the basis for a legal stop:


> A police officer need not always have knowledge of the specific facts justifying a stop and may rely upon a dispatch. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 297, 720 N.E.2d 507. This principle is rooted in the notion that effective law enforcement cannot be conducted unless officers can act on information transmitted by one officer to another, and that officers, who must often act quickly, cannot be expected to cross-examine their fellow officers about the foundation of the transmitted information. *Id.* The admissibility of evidence uncovered during a stop does not rest upon whether the officers relying upon a dispatch were themselves aware of the specific facts that led the colleagues to seek their assistance, but turns instead upon whether the officer who issued the dispatch possessed a reasonable suspicion to make a stop. *Id., citing United States v. Hensle*y (1985), 469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604. Thus, if the dispatch has been issued in the absence of a reasonable suspicion, then a stop in objective reliance upon it violates the Fourth Amendment. *Id.* The state must therefore demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity. *Id.* 87 Ohio St.3d at 298, 720 N.E.2d 507. *See, also Village of Newcomerstown v. Ungrean*, 146 Ohio App.3d 409, 2001-Ohio-1754, 766 N.E.2d 233.

**{¶18}** *State v. Johnson*, 5th Dist. Stark No. 2009-CA-00086, 2010-Ohio-139, ¶ 23.

**{¶19}** At trial in the instant case, Officer Schmidt testified he followed the car in which Appellant was riding, and observed the car change lanes without a signal. Officer Schmidt was driving an unmarked car and was not in uniform, so he put out a general call to Canton Police to stop the vehicle. Tr. (II) 35. The vehicle was stopped by Officer Anthony Angelo in response to the call. We find the testimony at trial demonstrates Officer Schmidt had probable cause to stop the vehicle for a traffic violation, and Officer Angelo could rely on that information in stopping the vehicle. We find Appellant has not demonstrated a reasonable probability a motion to suppress would have been successful in the instant case, and therefore has not demonstrated trial counsel was ineffective for failing to file a motion to suppress.

### Failure to Object

**{¶20}** Appellant next argues counsel was ineffective for failing to object or file a motion in limine to exclude data extracted from his and Cortney's cell phones. He argues the extraction report was not sufficiently authenticated, and a chain of custody of the phones was not established.

**{¶21}** Evid. R. 901(A) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." There is a "low threshold standard" for proving the authenticity of evidence. There is no requirement to present "conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims it to be." *State v. Guyton*, 2016-Ohio-8110, 74 N.E.3d 939, ¶ 25 (11th Dist. Ashtabula). The party seeking

admission of the evidence need only demonstrate there is a "reasonable likelihood that the evidence is authentic." *State v. Bickerstaff*, 11th Dist. Ashtabula No. 2014-A-0054, 2015-Ohio-4014, 2015 WL 5728518, ¶ 18. "Any question about the reasonableness of the inferences" to be drawn from cell phone record evidence is "an issue of weight rather than admissibility." *State v. Irvine*, 9th Dist. Summit No. 28998, 2019-Ohio-959, 2019 WL 1302429, ¶ 31.

**{¶22}** Appellant argues Officer Demyan never reviewed the extraction record in the instant case, and therefore could not testify State's Exhibits 17 and 18, which purported to be a text conversation between Appellant and Cortney Curtis, was what it claimed to be. He argues it was therefore error for Officer Schmidt to testify records he received from Officer Demyan contained copies of texts and videos extracted from phones belonging to Appellant and Cortney.

**{¶23}** Officer Demyan testified he was asked by the FBI Safe Street Task Force to perform a cell phone extraction on two cell phones, both of which he identified in court. He testified he did not look at the contents of the extraction because it was not his police department's case, but did check to make sure everything downloaded properly before generating a report for the agency, placing the contents on the zip drive. Officer Demyan was not permitted to testify State's Exhibits 17 and 18, the exhibits with the extracted content of the cell phones, were the text messages extracted from the phones because he had not reviewed the contents, and Appellant's objection on this basis was sustained. Tr. (II) 27. However, Officer Schmidt identified the extraction report in court as the report he received from Officer Demyan. Tr. 54. We find the testimony of the officers, taken together, sufficient to authenticate the text messages extracted from the phones of

Appellant and Cortney Curtis, and Appellant has not demonstrated counsel was ineffective for failing to object or file a motion in limine.

**{¶24}** Appellant also argues a chain of custody of the cell phones themselves was not established. However, any breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility. *See, e.g., State v. Franz*, 5th Dist. Knox No. 04CA000013, 2005-Ohio-1755, ¶ 18. The evidence in the instant case demonstrates police officers picked up Cortney Curtis's phone from the ground where it fell as he fled following the traffic stop, and collected a phone, which Appellant later admitted was his cell phone, from the dash of the car. The cell phones were turned over to the FBI Safe Streets Task Force, who turned them over to Officer Demyan for extraction of the contents. The phones were identified in court by multiple officers involved with the case. We find Appellant has not demonstrated an objection to chain of custody in the instant case would have been successful, particularly as any break in the chain would go to the weight of the evidence, not its admissibility. Appellant has not demonstrated counsel was ineffective for failing to object to the admission of the cell phone extraction report based on chain of custody of the phones.

### Reagan Tokes

**{¶25}** Appellant argues his trial counsel was ineffective for failing to challenge the constitutionality of the Reagan Tokes Act, under which he was sentenced.

**{¶26}** Because this Court has found the Reagan Tokes Act is constitutional, Appellant has not demonstrated a reasonable probability of a change in the outcome had counsel raised the issue in the trial court. *See, e.g., State v. Householder,* 5th Dist. Muskingum No. CT2021-0026, 2022-Ohio-1542.

**{¶27}** The first assignment of error is overruled.

II.

**{¶28}** In his second assignment of error, Appellant argues the trial court's jury instruction on complicity was incomplete because it did not include an instruction concerning the mens rea required of an accomplice, but only included a general definition of "aid and abet."

**{¶29}** When reviewing errors in a jury instruction, a trial court must consider a jury charge as a whole. *State v. Huish*, 10th Dist. Franklin No. 21AP-255, 2023-Ohio-365, ¶ 54, *citing Cromer v. Children's Hosp. Med. Ctr. of Akron,* 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 35-36. "An unnecessary, ambiguous, or even affirmatively erroneous portion of a jury charge does not inevitably constitute reversible error." *Id.* When a jury instruction incorrectly states the law, a reviewing court applies a mixed de novo and abuse of discretion standard of review, examining the jury charge as a whole and determining "whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Id.*

**{¶30}** The trial court read the indictment language to the jury, including the allegations Appellant trafficked and/or possessed cocaine, or aided or abetted another in doing so. The trial court read the jury an instruction concerning the mental states of knowingly and intentionally.  Included in the definitions provided to the jury, the trial court defined aid or abet:

Aided or abetted means supported, assisted, encouraged, cooperated with, advised, or incited.

**{¶31}** Tr. 138.

**{¶32}** The Ohio Jury Instruction for complicity provides:

The defendant is charged with complicity in the commission of the offense of (specify offense). Before you can find the defendant guilty, you must find beyond a reasonable doubt, that on or about the ____ day of ____, ____, and in ____ (County) (other jurisdiction), Ohio, the defendant (insert applicable culpable mental state if one is required for the commission of the principal offense ) * * *

* *

(A)(2) (aided or abetted) another in committing the offense of (specify offense).

**{¶33}** On the morning of the second day of trial, Appellant joined the argument made by Cortney Curtis the jury instruction should include an instruction to be convicted of aiding or abetting, the defendant must have the same culpable mental state as the principle. The trial court overruled the objection, noting she had been doing it this way for fifteen years, and there had never been a challenge to the instruction nor a Fifth District case criticizing the instruction.  Tr. (II) 11-12.

**{¶34}** We find the jury instruction in the instant case did not correctly state the law in Ohio regarding complicity, and the instruction should have included an instruction to be convicted of complicity, Appellant was required to have the same culpable mental state as the mental state required for commission of the principal offense.

**{¶35}** However, we find the jury charge did not mislead the jury in a matter materially affecting Appellant's substantial rights. The evidence in the instant case pointed to Appellant as the principal offender, and acted with the culpable mental state of "knowingly" required by the principal offense. The officers who interviewed Appellant testified Appellant admitted to driving to Canton from Texas with two kilograms of cocaine. The text messages exchanged between Appellant and Cortney included a discussion of cocaine prices, and how much they could expect to sell. Although we find the jury instruction as given was error, we find Appellant has not demonstrated the error affected his substantial rights in the instant case.

**{¶36}** The second assignment of error is overruled.

III.

**{¶37}** In his third assignment of error, Appellant argues the judgment of conviction is against the manifest weight of the evidence.

**{¶38}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶39}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶40} Appellant was convicted of trafficking in cocaine in violation of R.C. 2925.03(A):

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶41} Appellant was also convicted of possession of cocaine in violation of R.C. 2925.11(A), which provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶42} Officer McMurty and Officer Schmidt both testified although recording equipment at the Canton Police Department was not working when they interviewed Appellant, Appellant admitted the backpack in the car, which contained the kilogram of cocaine, was his backpack, and further admitted to traveling from Texas to Ohio with two kilograms of cocaine. Appellant admitted the cell phone found on the dash of the vehicle belonged to him, and provided officers the passcode to open the phone. Text messages

extracted from the phone included discussion between Appellant and Cortney regarding prices of cocaine and amounts of cocaine they could sell, including videos of the cocaine Appellant intended to transport from Texas.  We find the jury did not lose its way in finding Appellant guilty of trafficking in cocaine and possession of cocaine, and the judgment is not against the manifest weight of the evidence.

{¶43} The third assignment of error is overruled.  The judgment of the Stark County Common Pleas Court is affirmed.


By: Hoffman, P.J.
Wise, J.  and
Baldwin, J. concur