[Cite as *Withem v. Newark Leasing, L.L.C.*, 2024-Ohio-2607.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| RUTH WITHEM | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2024 CA 00002 |
| NEWARK LEASING, LLC | |
| Defendant-Appellee | O P I N I O N |

CHARACTER OF PROCEEDINGS:     Appeal from the Licking County Court of
Common Pleas, Case No. 2021 CV 00827

Reversed and Remanded

JUDGMENT:

DATE OF JUDGMENT ENTRY:     July 8, 2024

APPEARANCES:

For Plaintiff-Appellant

LOUIS C. SCHNEIDER, ESQ.
Thomas Law Offices, PLLC
250 East Fifth Street, Suite #440
Cincinnati, Ohio 45202

For Defendant-Appellee

G. BRENDA COEY
The Coey Law Firm, LLC
5344 Limerick Avenue, N.W.
North Canton, Ohio 44720

*Hoffman, J.*

**{¶1}** Plaintiff-appellant Ruth Withem appeals the summary judgment entered by the Licking County Common Pleas Court, dismissing her action for negligence and wrongful death against Defendant-appellee Newark Leasing, LLC.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** Appellee owns and operates a nursing home known as Newark Care. The decedent, Hallie Withem (hereinafter "Withem"), was admitted to Newark Care in 2012 when she was 85 years old. Throughout her stay, Withem had multiple illnesses including diabetes, urinary retention, multiple urinary tract infections (hereinafter "UTI"), kidney disease, incontinence, and schizophrenia. Cognitively, she was alert and oriented, and in the past was able to report signs and symptoms of a UTI to her healthcare providers at Newark

**{¶3}** Throughout her time at Newark Care, Withem had numerous UTIs. A catheter was discontinued in 2018 because it was thought to be the source of her numerous UTIs. After removable of the catheter, Withem had a UTI in March, April, and July of 2019. On August 13, 2019, her physician put in an order for the Newark Care staff to report any signs or symptoms of UTIs to him.

**{¶4}** On June 1, 2020, a nurse at Newark Care found Withem unresponsive upon entering her room. She was transported to a local hospital where she died on June 3, 2020. The death certificate listed the cause of death as septic shock due to a UTI.

**{¶5}** Appellant filed the instant action on September 22, 2021, alleging nursing home negligence and wrongful death. Appellant's expert, Joe D. Haines, M.D., provided a report alleging Newark Care violated the standard of care by failing to recognize Withem's risk for development of UTIs, failing to prevent the development of a serious

UTI, failing to prevent sepsis, and failing to properly and timely treat Withem once she developed sepsis.

**{¶6}** Appellee moved for summary judgment. The trial court granted the motion, finding in pertinent part:

There is no evidence to indicate plaintiff's decedent presented any symptoms of urinary tract infection at any time up to her being found unresponsive. The defendant was resuscitated and transferred to a hospital where she subsequently died two days later.

The plaintiff's expert further has been unable to establish any factual basis to indicate that the defendant violated standard of care in regards to plaintiff's decedent. Ms. Withem, by all accounts, appeared normal until she was discovered unresponsive. Plaintiff's expert further opines that other testing for urinary tract infections, not conducted by defendant, would have violated the standard of care if done without doctor orders to do so and there were none. Accordingly, the Court finds there is no genuine issue as to material fact and that the defendant is entitled to judgment in its favor as a matter of law.

**{¶7}** Judgment Entry, December 5, 2023.

**{¶8}** It is from the December 5, 2023 judgment entry Appellant prosecutes her appeal, assigning as error:

THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF APPELLEE.

**{¶9}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C) which provides in pertinent part:

Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶10}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment

bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 1997-Ohio-259, citing *Dresher v. Burt*, 1996-Ohio-107.

{¶11} In general, the elements of a medical negligence claim in Ohio are the same as those of a standard negligence claim – i.e., the cause of action "requires proof of (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 23, *citing Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77, (1984) and *Loudin v. Radiology & Imaging Servs., Inc.*, 2011-Ohio-1817, ¶ 13. "The scope of any duty owed is the standard of care that an actor must exercise," which as to medical professionals is "the degree of care that a medical professional of ordinary skill, care, and diligence would exercise under similar circumstances." *Id.* at ¶ 27, *citing Bruni v. Tatsumi*, 46 Ohio St.2d 127 (1976), paragraph one of the syllabus.

{¶12} Each element of a medical negligence claim, if factually relevant, must be considered "in the context of 'recognized standards * * * provided through expert testimony.' " *Id.* at ¶ 40, *citing Bruni* at 131-132. Failure to provide expert testimony establishing the applicable standard of care "is fatal to the presentation of a prima facie

case of medical negligence." *Grieser v. Janis,* 2017-Ohio-8896, ¶ 20 (10th Dist.), *citing Bruni* at 130.

**{¶13}** The trial court granted summary judgment on the basis there was no breach of a standard of care owed to Withem because she displayed no signs and symptoms of a UTI prior to being found unresponsive on June 1, 2020.

**{¶14}** In his expert report, Dr. Haines set forth the following violations of the standard of care:  (1) recognizing  Withem was at risk for UTIs and taking proper measures to minimize the risk, such as monitoring her urinary output and characteristics of her urine, and inquiring with a physician regarding a daily prophylactic antibiotic; (2) failing to prevent the development of a serious UTI by performing frequent urinalysis testing or getting orders from her physician if needed; (3) failing to prevent sepsis by allowing a UTI to progress to a life-threatening infection; (4) failing to provide adequate nutrition and hydration; (5) failing to properly treat the UTI in a timely fashion;, and (6) failing to recognize the evidence of sepsis until Withem became unresponsive.  In his report, he opined had the signs and symptoms of a UTI and sepsis been properly recognized, such as through checking urine for a foul smell or cloudy appearance, and treating the UTI in a timely fashion, Withem would not have died.

**{¶15}** During his deposition testimony, Dr. Haines retracted several of the opinions expressed in his report.  However, Appellant argues reasonable minds could differ as to whether Newark Care violated the standard of care by failing to monitor the characteristics of Withem's urine, leading to her death from a UTI which resulted in sepsis.

**{¶16}** At his deposition, Dr. Haines testified as follows:

Q.  When did staff fail to closely monitor her output and/or the characteristics of her urine?

A.  Daily.

Q.  Well, they were tracking her urinary output, were they not?

A.  Yeah.  But they should also have been tracking the color of the urine, the consistency, the cloudiness, and the odor.

Q.  You're familiar with the concept of documentation by exception?

A.  I'm not familiar with that.  What we do in the medical world is pertinent negatives and pertinent positives.  If you didn't do It, then it probably didn't happen.

Q.  For documentation by exception you document the pertinent abnormal findings.  Can we agree that in the entire month of May 2020 there are no abnormal findings documented with respect to her urine color, change, cloudiness, et cetera?

A.  No, you can't rely on that.

Q.  But can we agree that there's not documented changes in the color, consistency, odor of her urine in the entire month of May 2020

A.  Yeah.  And I would say probably because they failed to do it.

Q.  Okay.  Can we – you say they probably failed to do it.

A.  Yeah.

Q.  Can you say to a reasonable degree of medical probability that the staff failed to document negative findings?

A.  Yes.

Q.  Okay.  Based on what?

A.  Based on the fact that they missed that urinary tract infection in May and she got sepsis and died.  If they would have been documenting properly, they would have picked it up early enough for her to be treated.

**{¶17}**  Depo. Tr. 69-71.

**{¶18}**  He testified while he could not pinpoint with accuracy how long it took Withem to progress from a UTI to sepsis, from his experience dealing with patients with UTIs, a person does not go into urosepsis instantaneously.

**{¶19}**  Newark Care argues Dr. Haines's opinion is based on speculation, based on the outcome in this particular case.  Newark Care argues the order of Withem's physician required the staff to monitor Withem's urine, but did not require them to document their findings, and Dr. Haines testimony regarding the lack of documentation demonstrates he would not have expected documentation:

Q.  Okay.  But the doctor did not say monitor and document.  Fair?

A. That's fair.  I think he probably expected it, but you know, that's probably too much to expect.

Q. Okay.  Well that's a guess on your part what the doctor expected or didn't expect.  True?

A. You're exactly right.

**{¶20}**  Depo. Tr. 100.

Q. So if – if the physician at the facility had, you know, advised the staff to monitor Ms. Withem for UTIs and there's nothing in the records after that, you know, what kind of inferences do you draw from that?

A. Well, yeah, that – you know, that there was not careful monitoring performed, you know. I mean the easiest thing to do would have been to set up a separate sheet, you know, urinary tract monitoring, and check off all the things we discussed, you know, dysuria, frequency, flank pain, fever, you know, and do that on a consistent basis. That would have been in compliance with the physician's order. But that would have taken a little initiative, something like that, you know. So I'm not surprised it didn't happen.

**{¶21}** Dep. Tr. 98.

**{¶22}** We find the fact Dr. Haines speculated as to what the doctor expected from the nursing home as far as documentation of monitoring Withem's urine does not change his expert opinion Newark Care violated the standard of care by failing to monitor Withem's urine properly. The absence of documentation or an explicit doctor's order to document the same, does not necessarily mean Withem's urine was being monitored. Based on Dr. Haines's opinion, if Newark Care had properly monitored Withem's urine, whether or not the documented daily findings, they would have found the signs of a UTI which could have been treated before Withem progressed to sepsis. We find whether abnormalities were not documented because Newark Care failed to monitor Withem's urine, or whether abnormalities were not documented because Withem displayed no

signs of a UTI, is a question of fact for the jury. We also find the question of whether proper monitoring would have detected the UTI in time to prevent Withem's death is also a question of fact for the jury based on Dr. Haines's testimony people do not progress from a UTI to sepsis instantaneously. Further, Dr. Haines's comment he was "not surprised" monitoring *and* documentation did not occur is not necessarily a retreat from his opinion on the required standard of care, but could be interpreted as a comment on his lack of surprise Newark Care violated the standard of care or that he was not surprised by the lack of documentation in absence of a doctor order to do so.

{¶23} Newark Care emphasizes in the past, Withem was able to report symptoms of a UTI to the staff. However, the fact Withem had in the past communicated symptoms of a UTI does not change Dr. Haine's expert opinion the standard of care required Newark Care to monitor the condition of her urine for evidence of a UTI. In addition, Withem had been diagnosed with schizophrenia, and Dr. Haines testified Newark Care had to take her history of being alert and oriented "with a grain of salt." Depo. Tr. 55.

{¶24} We find reasonable minds could differ on whether Newark Care violated the standard of care by failing to monitor Withem's urine, resulting in the failure to diagnose a UTI which progressed to sepsis, causing her death in 2020. The trial court erred in dismissing Appellant's complaint on summary judgment.

**{¶25}** The judgment of the Licking County Common Pleas Court is reversed, and this case is remanded to that court for further proceedings according to law, consistent with this opinion.


By: Hoffman, J.
Delaney, P.J.  and
Wise, J. concur